ARMAND GREGOIRE, Respondent, v. G. P. PUTNAM'S SONS et al., Appellants, et al., Defendants.

Argued April 19, 1948; decided July 16, 1948.

*Vincent J. Malone* and *John A. Bross* for appellants. I. Sales of individual copies of a book containing libelous material are not republications within the meaning of the Statute of Limitations. (*Hartmann* v. *Time, Inc.*, 64 F. Supp. 671.) II. The " single publication " rule is clearly accepted law in New York. (*Fried, Mendelson & Co.* v. *Halstead, Ltd.*, 203 App. Div. 113; *Wolfson* v. *Syracuse Newspapers, Inc.*, 254 App. Div. 211, 279 N. Y. 716; *Winrod* v. *MacFadden Publications, Inc.*, 62 F. Supp. 249; *Campbell-Johnston* v. *Liberty Magazine, Inc.*, 64 N. Y. S. 2d 659; *Means* v. *MacFadden Publications, Inc.*, 25 F. Supp. 993; *Forman* v. *Mississippi Publishers Corp.*, 14 So. 2d 344; *McGlue* v. *Weekly Publications, Inc.*, 63 F. Supp. 744.) III. The " single publication " rule applies to books as well as to newspapers and magazines. (*Wolfson* v. *Syracuse Newspapers, Inc.*, 254 App. Div. 211, 279 N. Y. 716; *People* v. *Ryan*, 274 N. Y. 149; *Lewisohn* v. *Dial Press, Inc.*, 264 App. Div. 370; *Winrod* v. *MacFadden Publications, Inc.*, 62 F. Supp. 249.) IV. The " single publication " rule is an equitable rule. (*Hartmann* v. *Time, Inc.*, 64 F. Supp. 671.)

*Arthur E. Farmer* and *Benjamin H. Stern* for American Book Publishers Council, Inc., *amicus curiæ* in support of appellant's position. I. A libel is " reiterated " only when an independent act equivalent to a new " publication " in the trade sense, is committed. The mere continued dissemination of copies of the defamatory matter originally published is not a " reiteration " of the libel. (*Cook* v. *Conners*, 215 N. Y. 175; *Mack, Miller Candle Co.* v. *Macmillan Co.*, 239 App. Div. 738, 266 N. Y. 489;

*Woodhouse* v. *New York Evening Post, Inc.*, 201 App. Div. 9; *Wolfson* v. *Syracuse Newspapers, Inc.*, 254 App. Div. 211, 279 N. Y. 716; *Fried, Mendelson & Co.* v. *Halstead, Ltd.*, 203 App. Div. 113; *Campbell-Johnston* v. *Liberty Magazine, Inc.*, 64 N. Y. S. 2d 659, 270 App. Div. 894; *Hartmann* v. *Time, Inc.*, 60 N. Y. S. 2d 209; *Hartmann* v. *Time, Inc.*, 64 F. Supp. 671, *Lewisohn* v. *Dial Press, Inc.*, 264 App. Div. 370; *Galligan* v. *Sun Printing & Pub. Assn.*, 25 Misc. 355; *Means* v. *MacFadden Publications, Inc.*, 25 F. Supp. 993; *Frazier* v. *McCloskey*, 60 N. Y. 337.)

*Gunther Jacobson* and *Merril Charlton* for respondent. I. At common law each communication of libelous matter to a third person gave rise to a new cause of action. (*King* v. *Carlisle*, 1 Chit. 451 [K. B. 1819]; *Duke of Brunswick* v. *Harmer*, 14 Q. B. 185 [1849].) II. The common-law rule has been modified with respect to newspapers and periodicals. (*Hartmann* v. *Time, Inc.*, 64 F. Supp. 671.) III. The " newspaper rule " is not applicable to libel committed through books. (*Mack, Miller Candle Co.* v. *Macmillan Co.*, 239 App. Div. 438, 266 N. Y. 489; *Keystone Oil-Burner Co.* v. *Dun & Bradstreet, Inc.*, 175 Misc. 277; *Lewisohn* v. *Dial Press, Inc.*, 264 App. Div. 370.) IV. Upon the facts of this case it would be inequitable to deny the plaintiff his right of action. (*Winrod* v. *MacFadden Publications, Inc.*, 62 F. Supp. 249.)

LEWIS, J. This is a libel action based upon alleged defamatory statements contained in " Total Espionage ", a book of which the defendant Curt Riess is the author and the defendants-appellants G. P. Putnam's Sons and Books, Inc., are the publishers.

The appeal is from an order of the Appellate Division which reversed a judgment of Special Term dismissing the complaint upon the ground that the cause of action alleged is barred by the one-year Statute of Limitations. (Civ. Prac. Act, § 51, subd. 3.)

In November, 1941, the appellants, G. P. Putnam's Sons and Books, Inc., — to which it will be convenient to refer as Putnam's — commenced distribution of the initial printing of " Total Espionage ". Thereafter there were seven additional

printings of which the last was printed on December 27, 1943, and was distributed by Putnam's during a period beginning in March, 1944. Although 6,000 copies of the book were sold in 1941, and 6,300 in 1942, the sales thereafter declined until only 60 copies were sold from stock during the year immediately preceding July 2, 1946.

On the date last mentioned the present action was commenced in which the plaintiff claims he was subjected to actionable libel when, in June, 1946, Putnam's sold in the city of New York a single copy of " Total Espionage " and between July 2, 1945 and July 2, 1946, at least 20 copies were sold by Putnam's to various retail book stores in the United States.

Upon this appeal, taken by permission of the Appellate Division (Civ. Prac. Act, § 589, subd. 3, par [b]), our inquiry is limited by the following certified question of law: " Do sales from stock by a book publisher of copies of a book containing libelous material constitute republications of the libelous matter, so as to give rise to new causes of action within the meaning of Section 51, subdivision 3, of the Civil Practice Act, where the copies sold are from an impression made and released for wholesale distribution more than one year prior to the dates of such sales? "

The question invites examination of the trend of decisions which have dealt with the legal consequences in libel actions of proof of belated publications of the defamatory matter in suit. An early case, often cited, of liability carried to extreme is *Duke of Brunswick* v. *Harmer* (14 Q. B. 185 [1849]; 117 Eng. Rep. 75). There the plaintiff brought an action based upon a defamatory statement which appeared in an issue of a newspaper published by the defendant seventeen years before the action was brought. Ruling that the defensive plea of a then existing six-year Statute of Limitations was not effective, the court held that the plaintiff's evidence of a sale and delivery by the defendant to plaintiff's agent of a single copy of the newspaper containing the libel — seventeen years after the date of its issue but within the statutory period of six years before the action was commenced — was in law a new publication against which the Statute of Limitations had not run.

The rule of *Duke of Brunswick* v. *Harmer* (*supra*) — that each delivery to a third person of a defamatory article consti-

tuted a new publication of the libel, which in turn gave rise to a new cause of action — had its origin in an era which long antedated the modern process of mass publication and nation-wide distribution of printed information. That rule also gave scant heed to the public policy which underlies statutes of limitation, long regarded as " statutes of repose " designed to outlaw stale claims. (*Guaranty Trust Co.* v. *United States,* 304 U. S. 126, 136; *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 314; *Conklin* v. *Furman,* 48 N. Y. 527, 529; *Schmidt* v. *Merchants Despatch Transp. Co.,* 270 N. Y. 287, 302; and see 1 Wood on Limitations [4th ed.], § 4, pp. 7–11.)

There have been occasions in the past when this court has noted that what " seems vain and capricious to one generation may become the wisdom of the next." (*People* v. *Beakes Dairy Co.,* 222 N. Y. 416, 428; *Klein* v. *Maravelas,* 219 N. Y. 383, 386.) Recognizing that radical changes have been brought about by modern methods of disseminating printed matter for which there is a widespread demand, and desiring to avoid multiplicity of suits and to give effect to statutes of limitation, adjudicated cases disclose that within recent years courts of this State and other jurisdictions have ruled that the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable Statute of Limitation runs from the date of that publication. (*Wolfson* v. *Syracuse Newspapers, Inc.,* 254 App. Div. 211, affd. 279 N. Y. 716; *Hartmann* v. *Time, Inc.,* 60 N. Y. S. 2d 209, 210–211, affd. 271 App. Div. 781; *Campbell-Johnston* v. *Liberty Magazine, Inc.,* 64 N. Y. S. 2d 659, 660, affd. 270 App. Div. 894; *Age-Herald Pub. Co.* v. *Huddleston,* 207 Ala. 40, 43; *Forman* v. *Mississippi Publishers Corp.,* 195 Miss. 90; *Julian* v. *Kansas City Star Co.,* 209 Mo. 35, 71, 72; *Winrod* v. *Time, Inc.,* 78 N. E. 2d 708 [Ill.]; *Hartmann* v. *Time, Inc.,* 64 F. Supp. 671, 678–680; and see 166 F. 2d 127, 133–134; *McGlue* v. *Weekly Publications, Inc.,* 63 F. Supp. 744; *Cannon* v. *Time, Inc.,* 39 F. Supp. 660; *Backus* v. *Look, Inc.,* 39 F. Supp. 662; *Means* v. *MacFadden Publications, Inc.,* 25 F. Supp. 993.)

The cases last cited make clear the principle of law, now firmly established, that where, by modern methods of mass publication, a single issue of a newspaper or magazine containing libelous matter is released to thousands of readers, the one libeled may bring only one action. Upon the trial of that action evidence of the number of copies sold and the field within which distribution occurred becomes competent as proof of the extent of the injury suffered.

Upon its consideration of the present case the Appellate Division expressed the view (272 App. Div. 591, 592) that although there is case law which points to the adoption in this State of the " one publication " rule, that rule does not extend to books, as distinguished from newspapers or magazines. In reaching that conclusion the Appellate Division cited three decisions which, on the facts involved, are distinguishable from the case before us: In *Cook* v. *Conners* (215 N. Y. 175), the defendant owned two newspapers — the *Buffalo Courier,* which published afternoon issues, and the *Buffalo Enquirer,* which published morning issues. The alleged libel, couched in slightly different language, was published by the defendant in each newspaper on different days. In those circumstances the ruling quite properly was that each of the two publications gave rise to a separate cause of action. In *Mack, Miller Candle Co.* v. *Macmillan Co.* (239 App. Div. 738, affd. 266 N. Y. 489), the plaintiff's grievance was a libel appearing in a book which had been " reissued or republished " within a period of two years before the action was commenced — that period being then the statutory limitation applicable to a libel action. (See 239 App. Div. 738 at p. 742.) Likewise in *Woodhouse* v. *New York Evening Post, Inc.* (201 App. Div. 9), the six libelous articles — not identical in content — were published on six different dates during a period covering two months. It is thus made clear that the facts upon which rested the three decisions last mentioned above, and cited by the Appellate Division, make those decisions inapposite to the problem presented by the question of law certified to us.

If, as the complaint alleges, the book " Total Espionage " contained statements by which the plaintiff was defamed, a right of action for libel accrued to him. That right, however, was burdened with the statutory limitation that unless he com-

menced an action to recover damages for the alleged libel within one year after such an action accrued his right thereafter to recover would be completely and forever barred for lapse of time. (L. 1936, ch. 327, §§ 1, 2, amdg. Civ. Prac. Act, § 51.)

Although we may not concern ourselves with the wisdom of the Statute of Limitation last cited above (*People* v. *Nebbia,* 262 N. Y. 259, 271; *Johnson* v. *City of New York,* 274 N. Y. 411, 430), our duty is to give to that statute its intended effect as a statute of repose — designed " to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." (*Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 314, *supra.*) The statute (Civ. Prac. Act, § 51, subd. 3) which is controlling here is a declaration of public policy governing the right to litigate; it came into our law by way of the Legislature, not through the judicial process. " At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims." (*Schmidt* v. *Merchants Despatch Transp. Co.,* 270 N. Y. 287, 302, *supra.*)

Limiting our inquiry to the scope fixed by the question of law certified to us (*Bowlby* v. *McQuail,* 240 N. Y. 684, 687) we conclude that the reasons mentioned above, which underly the purpose of Statutes of Limitations, are as compelling when applied to cases involving the modern dissemination of printings or impressions of a book as when applied to cases involving the dissemination of issues of a newspaper or magazine. Otherwise, although a book containing libelous material may have been the product of but one edition or printing fifty years ago, if, by sale from stock or by display, the publisher continues to make unsold copies of the single publication available to the public today, such conduct would amount to a republication of any libel the book contains and thereby would become actionable. Under such a rule the Statute of Limitation would never expire so long as a copy of such book remained in stock and is made by the publisher the subject of a sale or inspection by the public. Such a rule would thwart the purpose of the Legislature, clearly expressed in section 2 of chapter 327 of the Laws of 1936 — to bar " completely and forever " all actions which, as to the time

of their commencement, overpass the limitation there prescribed upon litigation.

Although it may not be said that the publication and dissemination of books has reached that degree of mass production and widespread distribution now prevalent in fields invaded by newspapers and periodicals, it is our view that the publication of a libelous book, involving styling, printing, binding and those other acts which enable a publisher on a given date to release to the public thousands of copies of a single printing or impression, affords the one libeled a legal basis for only one cause of action which arises when the finished product is released by the publisher for sale in accord with trade practice.

In the circumstances set forth in the question of law certified to us we conclude that the bar of the Statute of Limitation (Civ. Prac. Act, § 51, subd. 3) cannot be lifted. To do so would disregard the clear purpose which the Legislature has conceived to be imperative — to outlaw stale claims. " ' The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed ' " (*Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342, 351).

The order of the Appellate Division should be reversed and the judgment of Special Term affirmed, with costs in this court and in the Appellate Division. The certified question is answered in the negative.

DESMOND, J. (dissenting). There can be no doubt that at common law the rule was as it is stated in comment c of section 578 of volume 3 of the Restatement of the Law of Torts: " each time a libelous book or paper or magazine is sold, a new publication has taken place ". (See Odgers on Libel and Slander [6th ed.], p. 132 *et seq.*, and p. 483; Seelman on Law of Libel and Slander [1945 Supp.], pp. 13–15.) There is certainly no case in this court, up to now, qualifying or limiting that rule so far as books are concerned. The rule itself had existed from time immemorial, and was well known to all those interested in the subject, so when the Legislature in 1936, shortened the period of limitations (Civ. Prac. Act, § 51, subd. 3) in libel actions from two years to one year, the Legislature necessarily meant one year from the time of any sale of a

book or periodical. Now that old rule is being changed so that a libel suit must be brought within one year, not from a sale, but one year from the original publication of the libelous book — a most drastic and wholly unnecessary alteration in the settled law of libel.

In *Wolfson* v. *Syracuse Newspapers, Inc.* (254 App. Div. 211, affd. 279 N. Y. 716), under most exceptional circumstances, the rule (as to each sale or exhibition being a new publication) was given something less than total effect as to a daily newspaper where the publisher kept old copies of his paper in its office and, long after the date of issue, allowed a person to inspect the copy containing the defamatory matter, it being held that such an accidental or incidental showing of a long obsolete periodical was not such a new publication as started the Statute of Limitations running anew. That decision clearly applied to its special facts only. However, in the course of time the *Wolfson* ruling has been used as the supposed basis of a new, so-called '' single publication rule '' to the effect that, as to newspapers and other dated and ephemeral periodicals, the only '' publication '' of which the law takes account is that which occurs when the particular issue leaves the periodical's office. There may be reason and logic in such a holding as to periodicals, since any sale or distribution thereof at a date long after the date of issue is incidental and inconsequential. But to apply this so-called '' single publication rule '' to *books* will be to let the exception as to periodicals swallow the whole rule and become itself the rule.

By reversing here, we are saying no less than this: that, once a book has been put on sale, no matter how few or many copies are sold the first year, the right of a defamed person to sue therefor expires absolutely and forever one year after the sale of the first copy. The book (same edition and same printing) may be on the market for years; it may descend the scale into the '' remainder '' or '' bargain '' class. It may sell only a few copies at first, then, more than a year later, leap into the best-seller class. Unlike a newspaper, the book may grow in popularity and effectiveness with the passage of time, with each new sale a fresh and damaging assault on the reputation of the victim. Yet under this new rule, the one defamed by these repeated deliberate and intentional wrongs has no remedy,

solely because he did not sue within a year from the time the first copy left the press and the publisher's office.

The date on a daily newspaper or weekly or monthly magazine marks the time of its use and importance. Since nothing is so dead as last week's newspapers, it is not unreasonable to hold that nothing that afterwards is done with them can be deemed a " publication " in law. But a book's existence is not intended to be, and is not, for any such brief time. The book publisher keeps his stock on his shelves and sends out books as called for. When, a year or two or ten years after first printing, he deliberately puts out new copies of the defamatory writing, how can it be said that he is not, in fact and in law, republishing the libel? And, since the common law is plain and just, and the statute certainly has not changed it, why should we extend to the whole field of books an exception appropriate to periodicals only?

In *Mack, Miller Candle Co.* v. *Macmillan* (266 N. Y. 489), there had been a new printing (not a revised edition but a printing of more copies of the same book) within the statutory period. But that decision does not say that, had there been no such second printing, the action would have been barred. A rule that publication is once and for all complete as soon as the first book is sold is bad enough, but to go further and say that there is a new publication whenever a new batch of the same unchanged book is printed, is to state a distinction without a difference and to leave a plaintiff's rights dependent on the size of the printings. Much simpler and more reasonable is the good old common-law rule that every sale of a book is a new publication. As to books, no reason has been suggested for changing that rule, and in any case, such a suggestion should be directed to the Legislature instead of the courts. There can not be the slightest basis for suggesting that the Legislature, when it fixed a one-year period within which libel suits must be brought, had any possible idea that this would be interpreted as meaning one year from the date when the first copy of the book was sent out into the world by the publisher. If the Legislature wants that to be the law in New York, the Legislature should be permitted to say so.

Of course, under the common-law rule, the period for bringing suit may run for a long time, but only if and because the tortfeasor insists on repeating his wrong. The producer of libelous

matter can start the statute running in his favor at any time by refraining from sending out any more libeling books. The Statute of Limitations is intended as a statute of repose but it is not intended to furnish a license for continued wrongdoing.

The order appealed from should be affirmed, with costs, and the certified question answered in the affirmative.

Conway, Thacher and Fuld, JJ., concur with Lewis, J.; Desmond, J., dissents in opinion in which Loughran, Ch. J., and Dye, J., concur.

Ordered accordingly. [See 298 N. Y. 753.]