MERWIN K. HART, Suing on Behalf of Himself and All Others, Similarly Situated, Plaintiff, *v.* E. P. DUTTON & COMPANY, INC., Defendant.

Supreme Court, Special Term, Oneida County, December 3, 1949.

*Bond, Schoeneck & King* for defendant.

*Foley, Callanen & Foley* for plaintiff.

MALPASS, J. A motion has been made by the defendant for judgment dismissing the complaint upon the grounds that the causes of action alleged in the complaint are barred by the Statute of Limitations and that the complaint does not state facts sufficient to constitute a cause of action.

The complaint sets forth two separate causes of action based upon alleged libelous statements claimed by the plaintiff to have been contained in a book entitled " Under Cover " which, according to the complaint was published by the defendant on or about July 18, 1943. It is alleged in the complaint that the book contained statements which were libelous and defamatory of the plaintiff and numerous other persons, the names and identities of some of whom are unknown to the plaintiff. The plaintiff has brought the action " on behalf of himself and all other persons falsely and unjustly held out to the public as traitors to America in time of war, and/or agents of the Axis enemy, in time of war, in the book ' Under Cover ', similarly situated." In the first cause of action set forth in the complaint the plaintiff alleges " that solely by reason of the aforesaid libellous publication, the plaintiff and those similarly situated, have suffered great humiliation and loss of reputation; have been held out to great hatred and contempt; have been exposed to mob hysteria; and have been placed in great fear for the safety of themselves and their families; and in other respects have suffered damage." It is further alleged in the first cause of action that the defendant sold a large number of copies of the book and has received in sales from the book, royalties, etc., proceeds which amount to the sum of $2,450,000 " which money defendant had and received to the

use of the plaintiff, and those similarly situated; and further, that five years have elapsed, between the receipt of said monies and the commencement of this action," and " that on or about March 15th, 1949, the plaintiff demanded of the defendant that it pay the said proceeds of the book ' Under Cover ', to the plaintiff for himself and for those similarly situated, but the defendant neglected and refused, and still neglects and refuses to pay the said proceeds, or any part thereof." The second cause of action is a repetition of the allegations contained in the first cause of action and in addition alleges that the defendant maliciously contrived to convey to the public the idea that the plaintiff and those similarly situated were enemies of, or traitors to the United States of America in time of war; that he was understood as meaning that they were traitors, and/or agents of the enemy, by those who read the book; and further, that the defendant intended to profit through the sale and circulation of this libelous matter, and did so profit, to the extent already set forth." The prayer of the complaint is for judgment in favor of the plaintiff and those similarly situated for the sum of $2,450,000, the amount alleged to have been received by the defendant, together with interest from March 15, 1944, which it may be assumed, is the date when the plaintiff claims the defendant received the profits derived from the publication of the book.

The defendant urges that the complaint fails to allege facts sufficient to constitute any cause of action except one to recover damages for libel and that such an action is barred by the Statute of Limitations. Section 51 of the Civil Practice Act provides that an action to recover damages for " libel or slander " must be brought within one year after the cause of action has accrued. A cause of action for libelous statements contained in a book accrues when the book is released by the publisher for sale in accord with trade practice. (*Gregoire* v. *G. P. Putnam's Sons,* 298 N. Y. 119, 125.) The complaint states " That on or about the 18th day of July, 1943, while America was at war with Germany and Japan, the defendant published, distributed, advertised, and circulated a book entitled ' Under Cover '." The action was begun in March, 1949. Beyond doubt, if plaintiff's action is deemed to be one to recover damages for libel, the action is barred by the statute.

The plaintiff contends that the action is not an action to recover damages for libel but is an action for money had and received and that subdivision 1 of section 48 of the Civil Practice Act is the applicable Statute of Limitation. This section provides that " an action [based] upon a contract obligation or

liability express or implied," must be commenced within six years after the cause of action has accrued. The plaintiff contends that the plaintiff has the right to waive his action for the tort and sue the defendant in assumpsit for the moneys which the defendant realized from the sale of the book and certain rights in connection therewith, on the theory that the law implies a contract on the part of a tort-feasor to account to the party injured by the tort for any moneys acquired by the tort-feasor in the commission of the tort. The plaintiff contends that the law forbids that any person shall profit by reason of a wrongful act against another and that to permit the defendant to retain the proceeds derived from the publication of the book containing the libelous statements would result in the unjust enrichment of the defendant and that the law will imply a contract on the part of the defendant to pay to the plaintiff and those persons similarly situated the moneys so received.

The question is squarely presented as to whether one who claims to have been damaged by the publication of a libel, under the circumstances alleged in this complaint, may waive the tort and maintain an action in assumpsit to recover the proceeds or profits derived from the publication of the libel. This seems to be a novel proposition and the briefs submitted by counsel for both parties fail to disclose any case where the precise question has been adjudicated nor has a rather extensive research by the court revealed any such case.

There are certain cases in which a person injured by a tort may waive the tort and sue for breach of what has been termed implied or quasi contract. Such right is not allowed in all cases (1 Cooley on Torts, [4th ed.], § 61). "The torts which it has been held can be waived are usually conversion, trespass to land or goods, deceit and the action for extorting money by threats." (Salmond on the Law of Torts, [8th ed.], p. 194.) It is noteworthy that in all of those cases the tort involved an injury to property. Section 37-a of the General Construction Law provides that libel is a personal injury.

An action in assumpsit lies against one who has obtained money from another by a fraud; the tort may be waived and an action may be brought founded on an implied promise to return the money wrongfully obtained. (*Rothschild* v. *Mack*, 115 N. Y. 1, 8.) Also an action in assumpsit lies against one who has converted money or property belonging to another. (*People* v. *Wood*, 121 N. Y. 522, 528–529; *Terry* v. *Munger*, 121 N. Y. 161.) The right to bring action in assumpsit *ex contractu* cannot be created simply by a waiving of the tort but this right depends

upon circumstances existing from which a contract will be implied.

In *New York Central R. R. Co.* v. *State of New York* (247 App. Div. 421, 424) the court said:

" The respondent's theory is not strengthened by the rule that in certain instances a party aggrieved may waive his cause of action in tort and proceed in contract. To sustain the waiver of a tort and an election to proceed in contract there must be a contract, either express or implied, under which the party may recover. The procedure then is rather an election or choice of remedies than a waiver. ' The same act or transaction may constitute both a cause of action in contract and in tort, and a party may have an election to pursue either remedy. In that sense he may be said to waive the tort and sue in contract.

" ' *But a right of action in contract cannot be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them, upon which assumpsit can be maintained.*' (*Cooper* v. *Cooper*, 147 Mass. 370; 17 N. E. 892.) " (Italics ours.)

The right to waive a tort and sue in assumpsit is dependent upon the existence of a contractual relationship either express or implied and in most cases the question arises as to the existence of an implied contract. Implied contracts are those implied in fact or implied in law. In *Miller* v. *Schloss* (218 N. Y. 400, 406–407) the court says: " The courts recognize by the language of their opinions two classes of implied contracts. The one class consists of those contracts which are evidenced by the acts of the parties and not by their verbal or written words — true contracts which rest upon an implied promise in fact. The second class consists of contracts implied by the law where none in fact exist — *quasi* or constructive contracts created by law and not by the intentions of the parties. A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract covering the subject-matter involved; or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary and unless he has conducted himself in such a manner that his assent may fairly be inferred he has not contracted. * * * A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when

and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy." 

The foregoing is cited with approval by Judge Lewis in *Grombach Productions, Inc.* v. *Waring* (293 N. Y. 609, 615.) Under these decisions it must be held that the complaint in this action contains no allegations which would establish a contract " *implied in fact*." The question then presents itself, as to whether the allegations of the complaint are such as to create a contract " *implied in law* " so as to enable the plaintiff to maintain the action as one *ex contractu* rather than in tort.

An action based upon invasion of one's right of privacy may be said to resemble, in many respects, an action based upon libel. In Street on Foundations of Legal Liability (Vol. 1, p. 319) it is stated: " It is supposed that if such a right is to be born it must come in some way from the law of libel. Those who contend for a right of personal security broad enough to include a general right ' to be let alone ' would not perhaps admit this, but unquestionably the law of libel furnishes a nearer approach to the indicated goal than any other branch of tort."

It would seem, therefore, that any adjudications where damages for invasion of one's right of privacy is involved might well be of assistance in determining the instant motion. In *Bunnell* v. *Keystone Varnish Co.* (254 App. Div. 885–886) the court said: " *The plaintiff has no cause of action on quasi-contract. An* action under section 51 of the Civil Rights Law is the plaintiff's sole remedy for the unauthorized use of her name (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51) *and the alleged unjust enrichment of the defendant is a part of that cause of action.* (Cf. *Franklin* v. *Columbia Pictures Corp.*, 246 App. Div. 35, 37; affd., 271 N. Y. 554.) " (Italics ours.)

In *Cason* v. *Baskin* (155 Fla. 198, 220–221) the Supreme Court of Florida, said: " The demurrer to the fourth count was also properly sustained by the trial court. *That count in effect claimed that the plaintiff was entitled to share in the profits received by the defendant for the publication and sale of her book* to the extent of one hundred thousand dollars. * * * that many copies of the book were purchased and paid for by persons of Alachua County and throughout the United States and *that thereby the defendant had received great financial profit, and*

*has thus become unjustly enriched at the expense of and to the damage of plaintiff,* to the extent of one hundred thousand dollars. * * * In our opinion this count states no cause of action." (Italics ours.)

These are the only cases to which my attention has been directed where an attempt has been made to recover the profits or proceeds derived from the invasion of a person's right of privacy. The theory of the plaintiff in each of these cases was substantially the same as is plaintiff's in the instant action. In each case the court held that the plaintiff could not recover profits on the basis of a quasi contract. The reasons which support this rule in regard to right of privacy are applicable to actions based upon libel.

As was stated in *Miller* v. *Schloss* (*supra*, p. 407) " A *quasi* or constructive contract rests upon the equitable principle that a person should not be allowed to enrich himself unjustly at the expense of another," and is created when " because of the acts of the parties " a person is possessed of money or property which in equity or good conscience he should not retain. The application of this rule requires inquiry, not only into the acts of the defendant, but also the acts of the plaintiff. One who publishes a libel, especially if done maliciously, as charged in this complaint, is guilty of conduct which makes him liable for damages. An action for damages affords the plaintiff full compensation for any injuries which he has suffered. In addition to compensatory damages he may recover punitive damages if proper foundation is established by the proof. The law requires that a plaintiff must bring his action to recover such damages within one year. It would seem that it is not equitable and just to permit a person, who has been the subject of a libelous article published in a book, to acquiesce in or permit the sale and distribution of such book to continue for a period of nearly six years without taking any steps whatsoever to protest or stop the sale and distribution of the book and then to maintain an action for the profits derived from the sale and distribution of the book. The publication of a book entails great expense and effort on the part of the publisher and the profits derived therefrom are due in large measure to elements outside of the printed matter contained therein. To permit such an action as the plaintiff has brought, under the circumstances alleged in the complaint, would have the effect of making the publisher for a period of years, the servant of the plaintiff, who, despite his failure to avail himself of a complete legal remedy, may now assert a right to the fruits of the defendant's labor and investment even beyond that

which may flow from the alleged libel. Such a situation would be inequitable and would result in the unjust enrichment of the plaintiff. Under such circumstances no contract should be " implied in law " requiring the defendant to account to the plaintiff for profits derived from the publication of the book.

Chapter 327 of the Laws of 1936 changed the period of time within which an action for damages for libel must be brought from two years to one year. This change was recommended to the Legislature by the Commission on the Administration of Justice in New York State. In N. Y. Legislative Document No. 50-D for 1934 (Vol. 16) at page 26, the commission said: " In the proposed amendments, the periods of time specified in the Statute of Limitations have been substantially reduced with respect to various types of actions. All of the considerations of policy which originally gave rise to the Statute of Limitations support the recommendation that the time limits provided in the statute should be substantially reduced. * * * These periods are not in keeping with the rapid tempo of our present day commercial and industrial activity. The Statute of Limitations is essentially a statute of repose, the object of which is to afford security against stale claims, and to require the adjudication of controversies while the evidence is still available and the recollection of the witnesses reasonably fresh. In order to serve this purpose effectively, the statutory periods should be substantially reduced."

Article 2 of the Civil Practice Act is entitled, " Limitations of Time " and section 10 of the Civil Practice Act is as follows: " § 10. *Application of article.* The provisions of this article apply and constitute the only rules of limitation applicable to a civil action or special proceeding, except in one of the following cases: * * * ."

The plaintiff asserts that the one-year Statute of Limitations is not applicable for the reason that his action is not for damages but is an assumpsit for moneys had and received and is based upon an implied contract and the six-year statute applies. In his brief, plaintiff's counsel states: " To call this an action for ' damages ' for libel, ignores basic facts. To reiterate, we are waiving these damages, and suing for money ' had and received '. *We are undertaking to prove additional facts never before pleaded in a libel suit:* namely, that the defendant ' had and received ' money by virtue of the publication of his libellous publication." Whatever the plaintiff may call the action, it is based upon the tort of libel and in the absence of any statute or

common-law authority, it must be considered as an action for damages for libel within the meaning of section 51 of the Civil Practice Act. In applying the Statute of Limitations the court should look for the reality and the essence of the action and not its mere name. (*Brick* v. *Cohn-Hall-Marx Co.*, 276 N. Y. 259, 264; 19 Yale L. J. 221, 243.) In *Gregoire* v. *G. P. Putnam's Sons* (298 N. Y. 119, 124–125, *supra*) Judge LEWIS said:

" If, as the complaint alleges, the book ' Total Espionage ' contained statements by which the plaintiff was defamed, a right of action for libel accrued to him. That right, however, was burdened with the *statutory limitation that unless he commenced an action to recover damages for the alleged libel within one year after such an action accrued his right thereafter to recover would be completely and forever barred for lapse of time.* (L. 1936, ch. 327, §§ 1, 2, amdg. Civ. Prac. Act, § 51.)

" Although we may not concern ourselves with the wisdom of the Statute of Limitation last cited above (*People* v. *Nebbia*, 262 N. Y. 259, 271; *Johnson* v. *City of New York*, 274 N. Y. 411, 430), *our duty is to give to that statute its intended effect as a statute of repose* * * * *The statute (Civ. Prac. Act, § 51, subd. 3) which is controlling here is a declaration of public policy governing the right to litigate; it came into our law by way of the Legislature, not through the judicial process.* ' At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims.' (*Schmidt* v. *Merchants Despatch Transp. Co.*, 270 N. Y. 287, 302, *supra*.) " (Italics ours.)

The plaintiff should not be permitted to avoid the effect of the Statute of Limitations by attempting to plead a cause of action for which there is no authority in law. (*Lucci* v. *Engel*, 73 N. Y. S. 2d 78.)

Libel has been a field of much litigation both in England and this country and during the course of the years many judicial decisions have been handed down in libel actions. It is significant that in none of these cases has an action such as is brought by the plaintiff in this case been instituted. The plaintiff recognizes this fact and states: " We are undertaking to prove additional facts never before pleaded in a libel suit, namely, that the defendant had and received money by virtue of his libellous publication." The absence of attempts to bring an action similar to the instant one is evidence of the recognition by the legal profession and the courts that such an action would not lie under the common law. In *Near* v. *Minnesota* (283 U. S. 697, 718) the

court said: " *The fact that for approximately one hundred and fifty years there has been almost an entire absence of attempts to impose previous restraints upon publications relating to the malfeasance of public officers is significant of the deep-seated conviction that such restraints would violate constitutional right.*" (Italics ours.)

The development of the law of libel has been accompanied in this country with the right of freedom of speech and freedom of the press which is guaranteed by the Federal and State Constitutions. In *Stuart* v. *Press Pub. Co.* (83 App. Div. 467, 477) Judge LAUGHLIN says: " Liberty of speech and of the press is guaranteed by the supreme law of the land and will be zealously guarded, preserved and enforced by the courts. The provisions of the Federal and State Constitutions (U. S. Const. 1st amendt.; State Const. art. 1, § 8) were designed to secure rights of the people and of the press for the public good, and they do not license the utterance of false, slanderous or libelous matter. Individuals are free to talk and the press is at liberty to publish, and neither may be restrained by injunction, *but they are answerable for the abuse of this privilege in an action for slander or libel under the common law,* except where by that law or by statute, enacted in the interest of public policy, the publication is privileged and deemed for the general good, even though it works a private injury." (Italics ours.)

In *Near* v. *Minnesota* (*supra,* pp. 718–719) the United States Supreme Court said: " Public officers, whose character and conduct remain open to debate and free discussion in the press, find their remedies for false accusations in actions under libel laws providing for redress and punishment".

The State which guarantees the freedom, punishes its abuse, and accords to the individual whose reputation has been attacked, remedies for the injuries sustained. *The remedies thus given at common law, regulated in certain respects by statute, are called actions of libel and slander, whose object is the recovery of money for the injury.* (Seelman on Law of Libel and Slander, p. 1.) It is evident that the right to recover based upon libel has been limited to the recovery of damages under the common law and statutes applicable thereto. It would seem, therefore, that the law is so well established that an innovation such as the plaintiff seeks in this action would impose new and unnecessary hazards upon publishers and would be contrary to the policy of our law. The reason for such conclusion can no better be expressed than in the language of the Court of Appeals in *Roberson* v. *Rochester Folding Box Co.* (171 N. Y. 538, 556):

" An examination of the authorities leads us to the conclusion that the so-called ' right of privacy ' has not as yet found an abiding place in our jurisprudence, and, as we view it, the doctrine cannot now be incorporated without doing violence to settled principles of law by which the profession and the public have long been guided."

In my opinion the complaint herein fails to state any cause of action other than a cause of action to recover damages for libel and such cause of action is barred by the Statute of Limitations.

The foregoing renders academic any determination as to whether the allegations of the complaint are sufficient to entitle the plaintiff to maintain the action in a representative capacity under section 195 of the Civil Practice Act. In my opinion, however, the facts alleged in the complaint are insufficient in this regard. Each person concerning whom libelous statements were contained in the book would have a distinct and separate cause of action, based upon a different set of facts and subject to entirely different defenses. The fact that the libelous statements were contained in the same book, does not give rise to a unity of interest with the plaintiff enabling him to maintain an action in their behalf. (*Society Milion Athena* v. *National Bank of Greece*, 281 N. Y. 282, 292; *Brenner* v. *Title Guar. & Trust Co.*, 276 N. Y. 230, 233; *Peacock* v. *Tata Sons, Ltd.*, 206 App. Div. 145.)

An order may be entered herein dismissing the complaint herein, with $10 costs to the defendant.