OPINION OF THE COURT
Richard F. Braun, J.
This is an action for libel. Plaintiff sued the authors and publishers of a book and article in which he claims he was defamed. Defendant The Conde Nast Publications, Inc. (Conde Nast), the publisher of the article, has already had its motion to dismiss the complaint granted, pursuant to CPLR 3211 (a) (7), for failure to state a cause of action (Riccardi, “Vanity Fair” *68 Wins Dismissal From Dali Profile Libel Suit, NYLJ, Mar. 1, 2000, at 1, col 3; Rothlein v Norton & Co., Mar. 3, 2000, at 26, col 5 [Sup Ct, NY County]). Now, defendant John Richardson (Richardson), the author of the article, moves to dismiss the complaint, pursuant to CPLR 3211 (a) (8), (7) and/or (c), for lack of personal jurisdiction and failure to state a cause of action. Separately, defendants W.W. Norton & Company, Inc. (WW Norton) and Ian Gibson (Gibson), the publisher and author of the book, respectively, move to dismiss the complaint, pursuant to CPLR 3211 (a) (5) and/or (c), based on the Statute of Limitations. Plaintiff cross-moves against that motion for leave to conduct discovery, pursuant to CPLR 3211 (d).
Defendant Gibson wrote a book called The Shameful Life of Salvador Dali (the book). He had previously published a prize winning book on Federico Garcia Lorca. In the book at issue, defendant Gibson discusses the effects of certain people’s actions on one of the 20th century’s most flamboyant artists, Salvador Dali, particularly those of his wife, Gala. She, as plaintiff concedes, had an intimate relationship with plaintiff, which began in the early 1960’s, when he was a handsome young actor. Plaintiff complains that he was defamed in the book where defendant Gibson said that plaintiff was a drug addict, was temporarily weaned off drugs by Gala, failed a screen test for Federico Fellini’s movie, Giulietta degli Spiriti (Juliet of the Spirits), and died soon thereafter of an overdose. Plaintiff alleges that all those statements in the book were untrue.
Defendant Richardson wrote an article about the book, which appeared in Vanity Fair magaziné, a publication of defendant Conde Nast. In the article, he makes a general statement that he could testify to the accuracy of defendant Gibson’s account in the book. Defendant Richardson wrote that in the 1970’s he was a vice-president of M. Knoedler & Co., Salvador Dali’s art dealers, and that plaintiff was a “junkie,” whom Gala “had weaned off drugs,” “failed a screen test for a walk-on part in a Fellini movie,” and “died of an overdose” shortly thereafter. Plaintiff alleges that all those statements about him were false.
Plaintiff contends that, in publishing the statements in the book and the article, defendants were grossly irresponsible, negligent, willful, wanton, or reckless in disregard of the truth, or failed to take proper steps to determine the accuracy of the assertions. In his complaint, plaintiff sought $250,000 in compensatory damages and $1,000,000 in punitive damages from each defendant.
CPLR 308 (2) provides that a natural person can be served with a summons by delivering a copy thereof to a person of *69 suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, and by mailing a copy of the summons to him or her at his or her last known residence or actual place of business. The affidavit of service of the summons and complaint in this action alleges that defendant Richardson was served at his place of business with the summons and complaint by personally delivering a copy thereof to the director of employee programs at defendant Conde Nast and by mailing a copy of the summons and complaint to defendant Richardson there. Plaintiff argues that he could serve defendant Richardson at the office of defendant Conde Nast because defendant Richardson is listed in defendant Conde Nast’s publication, Vanity Fair magazine, as one of its contributing editors.
Defendant Richardson admits that he is a contributing editor to Vanity Fair magazine. He contends that only means that he submits articles to that magazine on a freelance basis, and states that he is not employed by defendant Conde Nast and that the offices of defendant Conde Nast are not his actual place of business, dwelling place, or usual place of abode, nor does he have an office there or work at those premises. This is all corroborated by an affidavit from the legal affairs editor of Vanity Fair, who further states that defendant Richardson does not perform any editorial or other function for Vanity Fair besides the submission of articles.
The term “actual place of business” includes that location that the person to be served, “through regular solicitation or advertisement, has held out as [his or her] place of business.” (CPLR 308 [6].) The fact that defendant Richardson’s name is on the masthead of Vanity Fair does not mean that its office is his actual place of business.* It is defendant Conde Nast which holds out that address with defendant Richardson’s name on the masthead of Vanity Fair. There is no showing by plaintiff that defendant Richardson holds out that address as his, and defendant Richardson has demonstrated that he does not have an actual place of business at the office of defendant Conde Nast.
Plaintiffs contention that defendant Richardson has waived his objection to the lack of jurisdiction over his person *70 must fail. The argument is based on the stipulation that the attorney for defendant Richardson signed before making the motion to dismiss. The stipulation extended the time of defendants Richardson and Conde Nast to answer the complaint or move against it. That was not an appearance by defendant Richardson in this action, pursuant to CPLR 320 (a). Execution of the stipulation did not constitute a waiver of the right of defendant Richardson to make his motion under CPLR 3211 (a) (8) (CPLR 3211 [e]; see, Long Is. Sav. Bank v Meliso, 229 AD2d 478 [2d Dept 1996]).
Thus, this court lacks jurisdiction over the person of defendant Richardson, and the complaint must be dismissed as to him. His other ground for dismissal need not be addressed.
Defendants Gibson and WW Norton move to dismiss the complaint based on the Statute of Limitations, which for a libel cause of action is one year (CPLR 215 [3]; Gregoire v Putnam’s Sons, 298 NY 119, 124-125 [1948]; Sullivan v Simon & Schuster, 234 AD2d 58 [1st Dept 1996]). The Statute of Limitations begins to run when the publisher of a book releases the book for sale according to the practice of the trade (Gregoire v Putnam’s Sons, supra, at 126). That is when the book becomes generally available to the public (Sullivan v Simon & Schuster, supra, at 58; Tomasino v Morrow & Co., 174 AD2d 734 [2d Dept 1991]).
Pursuant to CPLR 304, an action is commenced when the summons and complaint or a summons with notice, pursuant to CPLR 305 (b), is filed. Here, the summons is stamped that it was filed on December 10,1999. The complaint is dated October 26, 1999, and the summons states that the complaint was filed on that date. The index number was purchased by plaintiff on October 26, 1999.
The vice-president and director of trade sales and marketing of defendant WW Norton states that beginning on or about October 1, 1998 and through October 20, 1998, WW Norton shipped 7,703 copies of the book to various bookstores and vendors throughout the United States, including national chains such as Borders and Barnes & Noble. He further alleges that, commencing on or about October 9, 1998, the bookstores began displaying copies of the book and offering them for sale. A senior buyer at Amazon.com states that, even before it received its first shipment of the book on or about October 9, 1998, as of January 7, 1998 Amazon.com began displaying the book on its web site and offering the book for sale on-line, and that Amazon.com received orders for at least *71 five copies of the book and shipped them between October 10 and 24, 1998. The director of trade books of Borders avers that Borders received a shipment of the book on or about October 1, 1998 and distributed copies of the book to Borders stores in 250 cities throughout the United States, which immediately began displaying the book, and that between October 15 and 25, 1998 Borders sold 39 copies of the book. The manager and book buyer of the Trade and Book Buying Division for the Department of Merchandising Activities of the Metropolitan Museum of Art in Manhattan states that, on or about October 21, 1998, the Museum received a shipment of the book, by no later than the following day began displaying the book and offering it for sale at its bookstore, and sold 10 copies between October 22, 1998 and June 30, 1999.
Thus, defendants Gibson and WW Norton have shown that the Statute of Limitations began running on plaintiffs libel claim more than one year before this action was commenced. Even plaintiff admits that he became aware of the publication of the book in November 1998 (see, Sullivan v Simon & Schuster, supra, 234 AD2d, at 58), which is pertinent if this action’s commencement date was December 10, 1999. Plaintiffs argument is meritless that the book’s official publication date of November 2, 1998 should control because that date is merely a publishing industry term of art for the date when publicity events for a book commence, which is usually substantially after books have already been shipped to bookstores and sales of the books have begun (see, Love v Morrow & Co., 193 AD2d 586, 589 [2d Dept 1993]).
Furthermore, plaintiffs contention is unavailing that he should be allowed discovery before the motion by defendants Gibson and WW Norton is decided. First, plaintiff has not shown that there may be facts in existence essential to justify opposition to the motion, as required by CPLR 3211 (d). Second, plaintiffs cross motion for discovery is based on plaintiffs claimed need for disclosure, pursuant to CPLR 3211 (d). Plaintiffs failure to submit an affirmation of good faith, which is required by 22 NYCRR 202.7 (a) (2) on any motion that relates to disclosure, mandates dismissal of the cross motion (Nikpour v City of New York, 179 Misc 2d 928, 930 [Sup Ct, NY County 1999]; see, Sixty-six Crosby Assocs. v Berger & Kramer, 256 AD2d 26 [1st Dept 1998]; Matos v Mira Realty Mgt. Corp., 240 AD2d 214 [1st Dept 1997]).
*72 Therefore, the motion of defendants Gibson and WW Norton should be granted, and the complaint dismissed as to them. The cross motion should be denied.

 If it did mean that, then this Judge could be deemed to have an actual place of business at SideBar Press, Inc., in Nyack, New York, whose publication Finkelstein & Ferrara’s Landlord-Tenant Practice Reporter lists this Judge by name as a contributing author. Although this Judge has served as such for that publication, this court has no actual place of business at SideBar Press, Inc., and has never even been to its office.