**Robert VAN BUSKIRK, Appellant.**

**v.**

**THE NEW YORK TIMES CO., a New York corporation, and John L. Plaster, individually, Appellees.**

Docket No. 00–9220.

United States Court of Appeals, Second Circuit.

Argued: April 9, 2002.

Decided: April 2, 2003.

---

Elihu H. Berman, Clearwater, Fla. (Bruce J. Robbins, Eastchester, NY, on the brief), for Appellant.

George Freeman, The New York Times Co. Legal Department, New York, NY, for Appellees.

Before: WINTER, McLAUGHLIN, and POOLER, Circuit Judges.

POOLER, Circuit Judge.

Robert Van Buskirk sued The New York Times Co. ("the Times") and John L. Plaster for libel. The suit against the Times arose from an editorial page article. The suit against Plaster arose from a letter Plaster wrote and posted on an Internet site. While the suit against the Times was filed within the one-year statute of limitations New York imposes for libel actions, the suit against Plaster was not filed within one year of the date Plaster first published his letter on the Internet. Under New York's single publication rule, the statute of limitations begins to accrue on the first date of publication. Van Buskirk argued that the rule should not apply to Internet publications. Because the New York State Court of Appeals recently held that the single publication rule applies to Internet publications, we affirm the district court's dismissal of the claims against Plaster. We also hold the district court properly dismissed Van Buskirk's claims against the Times after finding that the statements at issue were not reasonably susceptible of the defamatory meaning alleged by Van Buskirk's pleadings.

## BACKGROUND

On June 7, 1998, the Cable News Network ("CNN") broadcast a report on a U.S. military incursion, Operation Tailwind, which took place in a village in Laos in September 1970. According to Plaster, CNN, relying primarily on Van Buskirk, suggested that American forces used nerve gas during Operation Tailwind. Plaster, a former Green Beret and author of *SOG: The Secret Wars of America's Commandos in Vietnam*, wrote a letter critical of the CNN report and published that letter on a website on June 8, 1998.

The Times published a revised version of the letter as an opinion-editorial piece

(the "Article") on June 18, 1998. Plaster made a number of statements in the Article, including (1) the CNN report alleging U.S. forces used nerve gas to attack a Laotian village during Operation Tailwind was untrue; and (2) Van Buskirk was a source for this untrue statement.

Van Buskirk sued both the Times and Plaster for libel and intentional infliction of emotional distress. The district court dismissed the libel claims against Plaster as barred by the statute of limitations because the letter was first posted on June 8, 1998 and Plaster did not file his amended complaint, which included the Internet claim, until January 14, 2000. *Van Buskirk v. The New York Times Co.*, 2000 WL 1206732, at *1 (S.D.N.Y. Aug.24, 2000). The district court also dismissed the libel claim against the Times, finding the statements at issue were not susceptible to a defamatory meaning. *Id.*, at *3. The intentional infliction of emotional distress claim also was dismissed, and Van Buskirk does not challenge that dismissal on appeal. *Id.*, at *4. The district court denied Van Buskirk's motion for reconsideration on the issue of defamatory meaning. *Van Buskirk v. The New York Times Co.*, 2001 WL 262576, at *1–*2 (S.D.N.Y. March 14, 2001).

## DISCUSSION

We review a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) *de novo*, "taking as true the material facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Stuto v. Fleishman*, 164 F.3d 820, 824 (2d Cir. 1999).

### A. Single publication rule

■ New York adheres to a single publication rule in determining when the statute of limitations begins to run on a defamation claim. *Gregoire v. G.P. Putnam's Sons*, 298 N.Y. 119, 125, 81 N.E.2d 45 (1948). Under this rule, the publication of a single defamatory item, such as a book or article, even if sold in multiple copies, and in numerous places, at various times, gives rise to "only one cause of action which arises when the finished product is released by the publisher for sale." *Id.* at 126, 81 N.E.2d 45.

■ Van Buskirk argues New York State's single publication rule should not apply in the context of Internet publishing. The issue remained unsettled in New York State when we heard oral argument on this case on April 9, 2002. However, on July 2, 2002, the New York State Court of Appeals held that the single publication rule applies to Internet publishing. *Firth v. New York*, 98 N.Y.2d 365, 747 N.Y.S.2d 69, 72, 775 N.E.2d 463 (2002). As "the highest court of a state has the final word on the meaning of state law, [we] are bound to apply New York law as determined by the New York Court of Appeals." *Engel v. CBS, Inc.*, 182 F.3d 124, 125 (2d Cir.1999) (internal citation and quotation marks omitted).

■ The statute of limitations for libel in New York is one year. N.Y. C.P.L.R. 215(3). New York's single publication rule states that a defamation claim accrues at publication, defined as "the earliest date on which the work was placed on sale or became generally available to the public." *Tomasino v. William Morrow & Co.*, 174 A.D.2d 734, 571 N.Y.S.2d 571, 572 (2d Dept.1991). The rule implements a public policy of avoiding the exposure of publishers to "a multiplicity of actions, leading to potential harassment and excessive liability, and draining of judicial resources," as well as "reduc[ing] the possibility of hardship to plaintiffs by allowing the collection of all damages in one case commenced in a single jurisdiction." *Firth*, 747 N.Y.S.2d

at 71, 775 N.E.2d 463. Thus, the New York State Court of Appeals found, the policies behind the single publication rule support its application to Internet publishing. *Id.* at 71–72, 775 N.E.2d 463. Van Buskirk filed his amended complaint, in which he raised the Internet claim for the first time on January 14, 2000, more than a year after the June 8, 1998, publication of Plaster's letter on the Internet. The libel claim against Plaster therefore was properly dismissed as untimely.

## B. Defamatory meaning

Van Buskirk next argues the district court erred in finding the statements in the Article were not susceptible to a defamatory meaning. We disagree and find that the district court properly found that the Article was not susceptible to the defamatory meanings alleged in Van Buskirk's complaint. Van Buskirk's brief also argues that his pleadings alleged the additional defamatory meaning that he misled CNN. We agree with the district court that Van Buskirk's pleadings did not allege this defamatory meaning. Despite the district court's mention of this potentially defamatory meaning in its original opinion, the district court dismissed Van Buskirk's claim with prejudice, so that Van Buskirk could not amend his pleadings. Nonetheless, since the district court, in denying Van Buskirk's motion for reconsideration, found that amendment would in any case be futile, we do not find it necessary to remand to the district court in order to allow it to consider permitting amendment of the pleadings.

■ Libel plaintiffs "must identify a plausible defamatory meaning of the challenged statement or publication." *Celle v. Filipino Reporter Enters. Inc.,* 209 F.3d 163, 178 (2d Cir.2000). A defamatory meaning is one that "exposes an individual to public hatred, shame, obloquy, contume-

ly, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Id.* at 177 (internal quotation marks, alterations and citations omitted). While it falls to the jury to determine if a plaintiff was actually defamed, a court must decide as a threshold issue if the defamatory statement "is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir.1997). In making this judgment, the court is not to read the allegedly libelous statements alone, but must read them "as the average reader would against the whole apparent scope and intent of the writing." *Celle,* 209 F.3d at 177 (internal quotation marks omitted).

In his amended complaint, Van Buskirk alleged the Article contained defamatory statements, including:

A—that CNN had advanced the claim of the Plaintiff that the raid was intended to kill American defectors;

B—that CNN had advanced the claim of the Plaintiff that the United States Special Forces used sarin, a lethal nerve gas, on a Laotian village believed to be harboring American soldiers who had defected;

C—that CNN had attributed to the Plaintiff the claim that nerve gas had been dumped on the village the night before he and his team, without gas masks, attacked it.

Am. Compl. at 5. Van Buskirk further alleged:

35. Neither PLASTER nor THE TIMES sufficiently investigated to determine the truth of the matters contained in the above referenced statements, and they both ignored the fact that the Plaintiff had never uttered the claims to CNN attributed to him by

PLASTER and THE TIMES in the article.

. . .

38. The claims PLASTER and THE TIMES attribute to the Plaintiff in the article would subject the Plaintiff if true, to being charged with the commission of "war crimes" for which, if he were convicted,. he could be sentenced to death.

*Id.* at 5–6.

On the motion for summary judgment, the district court found that the statements, when read in the context of the entire Article, did not suggest Van Buskirk had committed a war crime. *Van Buskirk,* 2000 WL 1206732, at *3. Instead, the district court found that it was clear the Article suggested the opposite—that Van Buskirk could not have committed a war crime—because the Article included statements such as "[t]hese reports are untrue" and "[h]ow could Time and CNN have gotten it so wrong." *Id.*

Van Buskirk moved for reconsideration. He argued the statements as alleged were reasonably susceptible of a defamatory meaning because they may be read as accusing Van Buskirk of misleading CNN into broadcasting a false report. He explained that Paragraph 35 of his pleadings contained allegations of this defamatory meaning. The district court found that the pleadings did not "allege that the article suggested Van Buskirk misled CNN." *Van Buskirk,* 2001 WL 262576, at *2.

■ Van Buskirk makes two very specific allegations in Paragraph 35:(1) Plaster and the Times failed to sufficiently investigate the truth of the statements attributed to CNN, and (2) Plaster and the Times "ignored the fact that the Plaintiff had never uttered the claims to CNN attributed to him" in the Article. Both of these claims are different from claiming that the Article suggests Van Buskirk misled CNN.

Even assuming *arguendo* that the Article does imply Van Buskirk lied to CNN, that is not the claim levied in Paragraph 35. Nor is it raised elsewhere in the amended complaint. Thus, the district court properly dismissed the claims against the Times.

However, we also note that it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint. *See, e.g. Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991) Of course, a district court need not as a matter of course dismiss a complaint without prejudice to an attempted amendment of the pleadings. However, a court granting a 12(b)(6) motion should consider a dismissal without prejudice "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Id.* (citations omitted). Here, the district court dismissed Van Buskirk's complaint with prejudice, and without leave to amend, even though the court itself noted that it did not need to consider whether the Article was susceptible to the interpretation that Van Buskirk misled CNN since "Van Buskirk never raises it as a possibility." *Van Buskirk,* 2000 WL 1206732, at *3 n. 1. That the court itself referred to this potentially defamatory meaning suggests that a liberal reading of the complaint gave some indication that Van Buskirk might have been able to state a valid claim.

■ Nonetheless, we do not find it necessary to remand the case in order to allow the district court to consider amendment, since the district court discussed whether the Article was susceptible to this other defamatory meaning in its denial of Van Buskirk's motion for reconsideration. Although concluding that Van Buskirk's pleadings did not allege that the Article suggested he misled CNN, the district

court also found that the Article was not reasonably susceptible to that interpretation:

> The article maintains that CNN's accusations are untrue. It also explains that the CNN report attributes those accusations to Van Buskirk. However, the article avoids speculating as to why CNN reported false accusations. It suggests neither that CNN mistakenly attributed the accusations to Van Buskirk, nor that CNN was misled, let alone that CNN was misled by Van Buskirk.

*Van Buskirk,* 2001 WL 262576, at *2 (citations omitted). The court did not make an official ruling on Van Buskirk's request to file an amended complaint since "once judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated." *Id.* (citing *National Petrochemical Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991)). Of course, the district court's inability to act demonstrates why the district court may have initially considered dismissing the complaint without prejudice since if amendment had not been futile, and had been in the interests of justice, the court could then have granted Van Buskirk's motion to amend the complaint without any action by our Court. Nonetheless, since we agree that further amendment of this complaint would be futile, we affirm.

## C. The CNN broadcast

Van Buskirk argues the district court improperly considered the transcript of the CNN broadcast on a Rule 12(b)(6) motion to dismiss because the CNN broadcast is not integral to his complaint. Van Buskirk reaches this conclusion based on the submission of a transcript of the CNN broadcast to the district court by Appellees, and the failure of the district court to state flat out that it had not considered the transcript. We find no evidence in the record to support Van Buskirk's conclusion that the district court improperly considered the transcript.

In dismissing the complaint, the district court noted Appellees attached a copy of the CNN broadcast to their motion to dismiss. *Van Buskirk,* 2000 WL 1206732, at *3 n. 2. The district court discussed Van Buskirk's objection to the submission, noting "Van Buskirk argues that the district court must either disregard the transcript as a matter outside the pleadings or convert the defendants' motion to one for summary judgment, in which case, Van Buskirk contends he should first be entitled to conduct discovery." *Id.* The district court went on to state:

> I have two options: I may either disregard the transcript, or give the parties notice that the motion is be[ing] converted and permit the parties to submit evidence accordingly. Because it is possible to dismiss Van Buskirk's defamation claim without referring to the transcript, it will be disregarded.
>
> . . .
>
> . . . Because Van Buskirk's claim has been dismissed for failing to plead a plausible defamatory meaning, it is not necessary to consider the CNN transcript. Thus, there is no need to decide whether the transcript could have been considered. . . .

*Id.* (citations omitted). It is clear the district court recognized a dispute between the parties regarding the admission of the transcript. It is also clear that the district court did not consider the transcript in reaching its conclusion that the statements at issue were not susceptible to a defamatory meeting. We further note this court did not consider the transcript in reaching our decision.

## Conclusion

For the reasons given above, we affirm the judgment of the district court.