QUIGLEY COMPANY, INC., complainant,

*v.*

ASBESTOS LIMITED, INC., defendant.

[Decided October 8th, 1945.]

Mr. *George L. Burton* (*Mr. Morris Spritzer,* of counsel), for the complainant.

Mr. *Max L. Rosenstein,* for the defendant.

FIELDER, V. C.

The bill of complaint names Asbestos Limited, Inc., a corporation, and Nathan E. Newman its president, as defendants but Newman died a little more than a year after the institution of the suit and complainant abandoned its bill against him and proceeded against the corporate defendant alone.

Complainant seeks a decree that Asbestos Limited, Inc. (hereinafter referred to as the defendant), specifically perform a written agreement entered into by that defendant with complainant whereby said defendant granted to complainant the exclusive rights and franchises for the United States and Canada for the refractory field and industries in the distribution, marketing and sale of an asbestos insulating material newly put out by defendant under the trade name of "New Era Insulation," for which product said defendant owned patent and trade rights. Complainant also seeks a decree restraining defendant from selling or distributing to others

the material and products covered by the agreement and for discovery, accounting and damages occasioned by defendant's breaches of the agreement.

The contract is dated January 29th, 1942, and was duly executed by the proper officers of both parties. There is a dispute as to the exact date it was executed by defendant and became effective. For complainant the contention is that although its officers executed it January 29th, 1942, it was not executed by defendant's officers until February 13th, 1942, while defendant contends that its officers executed it January 29th, 1942. The evidence satisfies me that the contract was executed by defendant's officers February 13th, 1942.

Defendant contends that the contract was canceled and abrogated about four days after January 29th, 1942, by oral consent of both parties and although the possibility of a new contract was discussed, none was ever agreed on and the relation between the parties thereafter was that of complainant purchasing defendant's material and products merely as an ordinary customer of defendant. Complainant contends that the contract was never abrogated and that defendant continued to recognize its existence until October 18th, 1943, when defendant notified complainant that whatever arrangements had been made by complainant with defendant for the purchase of New Era insulation were canceled, the sole reason stated for that action being that complainant had failed to pay its bills as agreed.

It appears that after the contract with complainant had been executed, defendant found itself in a serious predicament because it had entered into a contract with the United States Government through the Navy Department, giving the Navy a first option on all its material, thus making it difficult and onerous for defendant to perform its contract with complainant. Prior to the date of defendant's contract with complainant, defendant had been negotiating for a contract with the United States Government and had been advised as early as January 27th, 1942, that the Secretary of the Navy had decided to enter into a contract with defendant, which contract was actually executed February 5th, 1942. Because defendant's obligations to complainant and to the Navy De-

parment conflicted, I have no doubt that defendant was desirous of cancelling its contract with complainant. Defendant contends and complainant denies that complainant's contract was then abrogated, complainant voluntarily surrendering its contractual preferences, yet as experienced business men defendant's officers failed to secure actual surrender or destruction of the contract, or the exchange of mutual releases, or other written evidence of rescission and defendant continued to deal with complainant until defendant notified complainant in October, 1943, that it canceled its arrangements with complainant. The evidence does not sustain defendant's contention.

The evidence satisfies me that defendant deliberately refused to fill complainant's orders and while professing its inability to sell complainant, sold to others large quantities of its products covered by the contract, including some sales made to complainant's customers, and that defendant also refused to allow complainant the discounts provided for in the contract and otherwise breached its contract with complainant.

Defendant contends that the contract is indefinite and uncertain and so obscure as to be incapable of enforcement. By the contract defendant represents that it owns patent and trade rights in an expanded asbestos material put out by it under the trade name of "New Era Insulation" and the contract states that complainant and defendant desire an arrangement for distributing and marketing that material and the products made therefrom. Then, according to the contract, defendant granted to complainant the exclusive rights and franchises for the refractory field and industries to market and sell New Era material and products which the contract states, are intended to cover all expanded asbestos materials under whatever name made and sold. Defendant covenanted that it would not compete with complainant in any way in the refractory field and the doubt or uncertainty stressed by defendant revolves around what meaning should be given to the words "refractory field." It was known to defendant, of course, exactly what material it had patented and was producing under the New Era trade-name and what its capacities were for the purpose for which it was produced. I think the

intent and meaning of "refractory field" is that field in which defendant's products as covered by its patents are capable of being used for refractory purposes. Refractory material is that material which is used for the lining of furnaces and crucibles and for similar purposes where a resistance of high temperature is required. The resistance qualities of New Era material are adaptable for temperatures up to 1,600 degrees and not for temperatures beyond that limit, so I think that the refractory field covered by the contract is clearly that field in which defendant's products can be used successfully.

Defendant contends that complainant breached that provision in the contract whereby it (complainant) agreed to discontinue selling in the refractory field its own "Insulblox" product in competition with the New Era goods and from taking on and selling in such field any asbestos competing goods. Complainant's Insulblox is a material designed to withstand temperatures in excess of 1,600 degrees and the evidence is uncontradicted that all sales made by complainant of its own product were to customers whose requirements were for materials to withstand a temperature in excess of 1,600 degrees; hence sales of complainant's Insulblox were for purposes for which New Era products were unusable and therefore were not made in competition with defendant's products.

Defendant further contends that complainant breached the contract by failure to make payments according to the terms of the contract for merchandise delivered on its order and that complainant in that respect was in default many times. There was some delay on the part of complainant in making payment for some of the goods billed to it but complainant insists that such delay was caused, in the main, by defendant billing complainant for goods not covered by the contract and which goods it appears complainant took on consignment to pay for as used, and also resulted from disputes over the proper discounts to which complainant claimed to be entitled. In any event that situation is covered by the contract provision that either party might terminate the contract upon a serious default of the other not made good within thirty days of written notice. Admittedly no such written notice was given by defendant to complainant and on receipt of defend-

ant's letter of October 18th, 1943, complainant promptly paid the balance owing the defendant.

Notwithstanding that I find that the contract on which complainant bases its suit has legal existence and that defendant breached it, I conclude that complainant is not entitled to a decree that defendant specifically perform it. It is a contract for no specified period which calls for personal service and the supplying by defendant of patented material, the terms and conditions under which performance is to be made by defendant being such that the court could not carry into effect such a decree without supervision and oversight over numerous questions which probably would arise from time to time as to whether defendant was substantially complying with the contract terms, for instance manufacturing material of sufficient quantity and proper quality to fill complainant's orders, and whether complainant was duly complying with the provisions and conditions thereof on its part to be observed, for instance paying its bills promptly and refraining from selling its own products in competition with defendant's products, thus involving the possibility of repeated applications to the court to do justice to the parties. In such a situation the court will refuse to exercise its jurisdiction by way of specific performance and will leave the complainant to seek relief at law. *Danforth* v. *Philadelphia, &c., Railway Co.,* 30 *N. J. Eq.* 12; *Wharton* v. *Stoutenburgh,* 35 *N. J. Eq.* 266-277; *Madison Athletic Association* v. *Brittin,* 60 *N. J. Eq.* 160; *Atlantic, &c., Railway Co.* v. *Atlantic Freeholders,* 84 *N. J. Eq.* 618; *Fiedler, Inc.,* v. *Coast Finance Co., Inc.,* 129 *N. J. Eq.* 161-167; 145 *A. L. R.* 691; 58 *C. J.* 889, § 45.

Complainant contends that although the contract fixes no term for which it shall run, the presumption is that the term intended is for the life of defendant's patents. The evidence does not disclose what that term is but it may be quite long because the contract states that defendant owns patents and patent rights for material it has "newly put out" and the inference is that its patent rights had been acquired but a short time prior to the contract date and therefore still have a long period to run. Defendant may sell or assign its patents

to others and thus make performance on its part impossible and there is involved in the matter of performance the question whether and to what extent the defendant is under superior obligation to the United States Government to meet the demands of the Navy Department for the merchandise in question. But the complainant contends that if a decree for specific performance be coupled with an injunction restraining defendant from selling to others any of the products covered by the contract, the relief it seeks would be attended with little or no difficulty in enforcement because the court could readily penalize any specific violation of the injunction brought to its attention. An injunction would be ancillary to the main relief of a decree for specific performance and its enforcement would depend on the same considerations as would apply to defendant under a decree for specific performance. The same reasons which make impracticable the enforcement by the court of a decree for specific performance apply to an injunction, the observance of which by defendant being similar to observance of a decree for specific performance.

Moreover specific performance of a contract will not be granted where mutuality of obligation and remedy does not exist. *Fiedler, Inc.,* v. *Coast Finance Co., Inc., supra.* Complainant seeks to compel defendant to supply it exclusively with the material described in the contract, apparently as and when complainant may order it and to enjoin defendant from supplying it to any other person, but there is nothing in the contract which specifies the time and extent of material for which complainant must place orders; indeed complainant is under no contractual obligation to place any orders with defendant save as the contract provides that complainant will use its best reasonable efforts to push and increase sales of New Era materials in the refractory field, and the contract reserves to complainant the right of terminating it if by lack of patent enforcement serious competition in similar goods arises, or if for any other reason the enterprise becomes unprofitable. On the other hand, defendant's right to terminate the contract is limited merely to a serious default on complainant's part not made good within thirty days of written notice.