37 N.J. Super. 439 (1955)
117 A.2d 527
NATHAN SILVERSTEIN, ET AL., ETC., PLAINTIFFS-RESPONDENTS,
v.
ABCO VENDING SERVICE, INC., ETC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1955.
Decided November 2, 1955.
*442 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Edward R. McGlynn argued the cause for defendants-appellants (Mr. Jack Feinberg, attorney).
*443 Mr. Seymour Margulies argued the cause for plaintiffs-respondents (Mr. Maurice C. Brigadier and Mr. Sol Schulman, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs ("Silco" hereinafter) conduct a cigarette vending machine business. They contract for the placement of machines in such locations as taverns and restaurants. Their complaint alleges in effect that the defendant Abco Vending Service, Inc. ("Abco" hereinafter), a competitor, has been pirating their customers throughout Hudson County. Fifty of these have been joined as defendants. The complaint recites that Silco has contracts in effect with all of them, running generally for five years, some for shorter periods, pursuant to which the location owners grant it exclusive rights to sell cigarettes on their premises by means of the machines for the contract period; that the agreements provide for continuous automatic renewal in the absence of specified notice to the contrary prior to the end of any contract term; that all of the location owners have entered into a maliciously motivated conspiracy with Abco to break their agreements with Silco and to replace its machines with Abco machines; that Abco has wrongfully induced them to breach their agreements with Silco by slandering it, advising them that the agreements are void and unenforceable and by offering to save them harmless against any claim by Silco if they substituted Abco machines for Silco's; and that by similar methods Abco is endeavoring to misappropriate other of Silco's contract locations. There follow recitals of Silco's large investment in developing its business and obtaining these contracts, of past and prospective substantial and irreparable injury, and a demand for judgment; (1) for specific performance of the contracts; (2) for injunction against breach of the contracts by the location owners; (3) for injunction against the furnishing or use of the Abco machines or the sale of cigarettes purveyed thereby; (4) for injunction against interference with or inducement *444 of breach of Silco's contracts with the other defendants by Abco; and (5) for damages against all defendants.
The complaint was verified only by pro forma affidavits made on knowledge, information and belief by one of the plaintiffs and two of his employees. It was filed August 30, 1955 and a temporary restraint was entered the same day together with an order to show cause why a preliminary injunction should not issue returnable September 12, 1955. The present appeal is from an injunction granted after hearing in the Chancery Division that day.
Abco filed an answer denying the allegations of the complaint except to the extent of admitting that its machines were placed and operated in the premises of the co-defendants and that where the plaintiffs "had abandoned" their agreement in any particular case it agreed to save the location owner harmless against any claims by plaintiffs. The co-defendants filed a separate joint answer. Some of them admitted an agreement; others denied it or contradicted the terms alleged; others put plaintiffs to their proof. They all admitted the installation of Abco machines, denied Abco had made any representations to them or induced a breach of the Silco agreement, pleaded that plaintiffs had breached or terminated the contracts (not stating in what respect) and denied the other allegations of the complaint.
No answering affidavits were filed on behalf of the location owners, the plea of their counsel, who also represented Abco, being that because of their number and the denial of a request for adjournment there was insufficient time between the date of service on them of the moving papers and the return of the application for preliminary injunction for preparation thereof. The executive officer of Abco filed an affidavit generally denying, seriatim, the particular allegations of wrongful conduct imputed to Abco in the complaint, but admitting that he induced some of the co-defendants to make contracts with him, others having come to him for contracts, and stating that from the "explanations" of the Silco contracts made to him he believed they were not valid agreements. He admits that in some cases he offered to *445 defend the location owner against Silco claims for breach of contract. He said: "I did not knowingly encourage or advocate the breach of a contract that I felt to be valid." (Emphasis supplied) Identical verbiage is to be found in the affidavits of several other Abco employees. Affidavits were submitted by plaintiffs at the hearing on the application for injunction showing that many of the location owners were in violation of the temporary restraint.
Silco concedes that the violations of its contracts by some of these defendants commenced as early as February and March 1955, and that the defaults by the others took place at various times in the interim; also that at various times from March 18, 1955 to August 4, 1955 it has instituted actions for damages for breach of contract against some 21 of the defendants in the Hudson County District Court or in the Hudson County Court, all of which are pending. An affidavit offered by defendants lists some 25 of the defendants against whom such actions are pending and states that in each of them Silco demands judgment for prospective damages up to the expiration date of the agreement. It was argued below that the delay in bringing the present action and the election by plaintiffs to terminate the contracts in the case of those against whom it brought actions for damages bars the right to injunction. Plaintiffs' response in the Chancery Division and here is that the "cumulative effect" of the various violations as a "tortious conspiracy" by the defendants by which plaintiffs were being "driven out of business" was not appreciated by Silco prior to the time it brought this action; also that prosecution of its district court actions was held up by order of the Hudson County District Court pending the outcome of appeals challenging the validity of its contracts, finally determined in favor of plaintiffs by the Supreme Court on June 6, 1955 in Silverstein v. Keane, 19 N.J. 1 (1955); see Silverstein v. Dohoney, 32 N.J. Super. 357 (App. Div. 1954), and Silverstein v. Keane, 35 N.J. Super. 303 (App. Div. 1954). It is to be noted, however, that suits for damages were brought against some of the present defendants subsequent to the Supreme *446 Court decision and that the present action was not instituted until almost three months thereafter.
The injunction under appeal was granted on the ground that the legal remedy against defendants was doubtful or inadequate; that the conduct of Abco was not only wrongful but "planned and widespread" and that the remedy was necessary to prevent a multiplicity of wrongs and lawsuits. It restrained all of the co-defendants of Abco from selling cigarettes on their premises other than through Silco's machines and enjoined Abco's maintaining its machines at the locations of any of said defendants or of any other persons having agreements with Silco.
There is nothing new about the appropriateness of the remedy of injunction to restrain acts "`destroying a complainant's business, custom, and profits.'" Ferraiuolo v. Manno, 1 N.J. 105, 108 (1948). See the collection of authorities exemplifying the application of both legal and equitable remedies for redress of wrongful interference with another's occupation or business in Longo v. Reilly, 35 N.J. Super. 405 (App. Div. 1955). One well-settled application of the doctrine is injunction to restrain an unjustified inducement of breach of contract. 43 C.J.S., Injunctions, § 89, p. 597; Feller v. Local 144, International, etc., Union, 121 N.J. Eq. 452 (E. & A. 1937); Schechter v. Friedman, 141 N.J. Eq. 318 (E. & A. 1948). We have no hesitancy in holding that the defendant Abco was sufficiently shown to have been aware of the Silco agreements and to have unjustifiably induced their breach in order to succeed to Silco's custom. The agreements have been held valid (supra) and Abco acted at its peril in assuming the contrary, whether or not in good faith. Its conduct trespassed the bounds of lawful competition. We are not unmindful of the insufficiency of plaintiffs' supporting affidavits, to which we have already adverted and in reference to which we will have more to say. But Abco's own affidavits have supplied the deficiency by the clear indication therein of knowledge of Silco's contracts and a pattern of inducement of their breach and by the revelation of guilt implicit in their circumspectly tailored denial *447 of advocacy of breaches of any contracts which the affiants "felt to be valid." Nor do we regard Abco's behavior such as to warrant application in its favor of the rule of laches, the requirement therefor being not only inaction by plaintiffs for an unreasonable length of time but prejudice to the party asserting it. Riverton Country Club v. Thomas, 1 N.J. 508 (1948), affirming 141 N.J. Eq. 435, 448 (Ch. 1948). Abco asserts prejudice in having incurred large obligations for purchase of machines installed in Silco locations. This does not strike us as the kind of prejudice, in the circumstances, which should move the conscience of the court. We therefore affirm the injunction insofar as it is addressed to Abco, but, of course, without prejudice to such course as may be indicated by the proofs at final hearing.
As to such of the defendants, however, against whom plaintiffs had separate actions for damages pending in other tribunals when it brought this action and as late as the argument of this appeal we deem the injunction should be vacated. There was nothing whatever before the trial court to support what seem to us the extravagant claims stated in the complaint that all of the location owners had conspired with Abco maliciously and out of "ill-will and personal animosity" toward plaintiffs to injure the plaintiffs, interfere with their business with all the other defendants and to benefit Abco at the expense of the plaintiffs. There is, so far as any of the co-defendants of Abco are concerned, no evidence in the record of any more than that they defaulted in their several agreements with Silco at the inducement of Abco, but each acting solely out of self-interest and unmoved by the competition between Abco and Silco in respect to any other location. While a short-form verification of a complaint may, in an emergency, possibly justify a temporary restraining order in the circumstances stated in R.R. 4:67-2, a bare verification on "knowledge, information and belief," not stating the sources of the information or the grounds of the belief, and unaccompanied by the affidavits of persons having knowledge of the facts, will not support an application for a preliminary injunction. Township of Maplewood v. Margolis, *448 102 N.J. Eq. 467 (Ch. 1928), affirmed 104 N.J. Eq. 207 (E. & A. 1929). The proofs in such behalf "must be clear and convincing and must substantially show the facts necessary to support the theory upon which the restraint is to rest." Kitty Kelly Shoe Corp. v. United Retail, etc., Local 108, 126 N.J. Eq. 318, 319 (E. & A. 1939). No such proofs were adduced here by plaintiffs other than the affidavits filed to show violation of the temporary restraint and those indicate only that Abco machines supplanted Silco's. See also R.R. 4:44-4; Toth v. Vazquez, 3 N.J. Super. 379, 383 (Ch. Div. 1949); Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 37 (1950); Ash v. Frazee, 37 N.J. Super. 542 (App. Div. 1955).
The relief Silco had in the Chancery Division as against the 50 co-defendants of Abco was tantamount to enforcement of the negative covenant in its agreements with each of them. Indeed, in prohibiting the sale of any cigarettes other than those supplied by Silco, the injunction practically amounted to an order for specific performance of the agreements pendente lite as the proof is that it is an economic necessity for taverns and restaurants of the type of those here involved to have cigarette vending machines available for their customers. Whether long-term agreements of this character, contemplating the continuous servicing and repair of machines and the supplying them with merchandise, are within the category of contracts which will be specifically enforced, need not be presently decided. See Annotation, 125 A.L.R. 1446, 1453-1455; Quigley Co., Inc., v. Asbestos Limited, Inc., 23 N.J. Misc. 301 (Ch. 1945), affirmed 138 N.J. Eq. 111 (E. & A. 1946); cf. Western Union Telegraph Co. v. Rogers, 42 N.J. Eq. 311 (Ch. 1886). If the contracts were not specifically enforceable as against Silco, considerations as to mutuality of remedy (as distinguished from mutuality of obligation) would bar their specific performance against the other contracting party. Fiedler, Inc., v. Coast Finance Co., 129 N.J. Eq. 161 (E. & A. 1941); Bethlehem Engineering Export Co. v. Christie, 105 F.2d 933, 125 A.L.R. 1441 (2 Cir. 1939). But the absence of a suitable *449 factual record and of argument on the point on this appeal suggests that the question should be left for determination at final hearing.
The dispositive consideration as to the defendants now being sued for damages in the county district court and in the county court is that plaintiffs are not at liberty to subdivide their litigation as to any of such parties, none of whom are responsible for its quarrel with any of the other location owners, into a two-front contest, one in the district court or the county court for damages and the other in the Superior Court for enforcement of the negative covenant by injunction. Since Ajamian v. Schlanger, 14 N.J. 483 (1954), there remains no basis to misapprehend that the courts of this state are determined to enforce the prime aim of the new practice for "* * * the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants" (Id., 14 N.J., at page 485); Massari v. Einsiedler, 6 N.J. 303, 307-309 (1951); cf. New Jersey Highway Authority v. Renner, 18 N.J. 485, 492 (1955). (Emphasis supplied) "The piecemeal litigation of fragments of a single controversy is too evident an evil to remain unchecked," within present-day philosophies as to the efficient functioning of litigation. Schnitzer, Civil Practice and Procedure, 10 Rutgers L. Rev. 351, 371 (1955); Id. 9 Rutgers L. Rev. 307, 334 (1954). The cited discussions of this principle by Professor Schnitzer make it plain that its implications are yet far from fixed and its potential qualifications imponderable, particularly in its impact upon defendants; see Middlesex Concrete, etc., Corp. v. Borough of Carteret, 35 N.J. Super. 226, 240 (App. Div. 1955). But it is clear to us that it is transgressed by the course here charted by plaintiffs. We are satisfied that long before instituting this action they knew exactly what Abco was up to and nevertheless chose, for reasons best known to themselves, to institute and prosecute county district court and County Court damage suits against various of the location owners. As late as the argument of these appeals, they were still deliberately proceeding with their dual-front assault on many *450 of these defendants in both the County Courts and the Superior Court notwithstanding that the damages they seek in the County Courts are obtainable concurrently with the injunctive remedy in the Chancery Division, at least so far as consistent therewith, as appropriate to the expeditious determination of "the entire controversy." While the record of the actions in the other courts is not before us, the essential facts are conceded and we deem it necessary as a matter of sound policy that we notice them and enforce the practice prohibition of the fractional litigation here manifested.
We pass consideration of the contention that the actions for damages connote an election to terminate the contracts and thereby preclude their enforcement by injunction. See Levy v. Massachusetts Accident Co., 124 N.J. Eq. 420, 431 (Ch. 1938); Blum Building Co. v. Ingersoll, 99 N.J. Eq. 563, 568 (Ch. 1926), affirmed 101 N.J. Eq. 291 (E. & A. 1927); cf. Levy v. Massachusetts Accident Co., 127 N.J. Eq. 49 (E. & A. 1940). If the complaints in the county district court and County Court seek damages for the entire remaining contract term (the complaints are so described by defendants but are not before us) their continued prosecution to judgment would seem to be inconsistent with the assertion of a right to their present enforcement in equity. While the present practice permits the assertion of inconsistent claims in a single complaint, R.R. 4:8-5(b), or by amendment during the proceedings as the use of discovery procedures broadens a litigant's insight into his legal relations with his adversary, Ajamian v. Schlanger, supra (14 N.J., at page 485), Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 369, 370 (1954), these rights would not seem to include the tactic of deliberately carrying on simultaneous actions in different courts requesting inconsistent relief against the same defendant in respect to the same controversy.
The cause is remanded to the Chancery Division with directions to modify the preliminary injunction so as to eliminate therefrom all restraints against those of the defendants against whom plaintiffs had county district court or *451 County Court actions for damages pending or reduced to judgment when this appeal was argued; as to such defendants no costs are allowed to either side. As to all other defendants the injunction is affirmed, with costs.