ANTHONY BARRES, PLAINTIFF-APPELLANT, v. HOLT, RINEHART AND WINSTON, INC., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-RESPONDENT.

Argued April 25, 1977—Decided October 17, 1977.

*Mr. Barry H. Evenchick* argued the cause for appellant (*Messrs. Walder, Steiner, Sondak & Evenchick,* attorneys).

*Ms. Jane M. Langseth* argued the cause for respondent (*Messrs. Pitney, Hardin & Kipp,* attorneys; *Ms. Langseth, Mr. Clyde A. Szuch,* and *Mr. Armen Shahinian,* on the brief).

PER CURIAM. The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division.

SCHREIBER, J., dissenting. I cannot agree with the proposition that the equitable doctrine of prevention of a multiplicity of actions should operate to destroy the plaintiff's cause of action for libel. Nor can I agree with the proposition that the one year statute of limitations for libel should bar an action where more than 1800 copies of the libel had been distributed by the defendant within one year of the institution of the suit. Yet, the principle adopted by the majority countenances these results.

The detailed undisputed facts, resolved on a motion for summary judgment, are set forth in the trial court's opinion. 131 *N. J. Super.* 371 (1974). For purposes of this discussion it is proper to assume (the matter having been

resolved on motion for summary judgment) that the defendant Holt, Rinehart and Winston, Inc. published a book entitled *No Cause For Indictment* in which the plaintiff was libeled. The defendant had had 6000 copies of the book printed in the Summer of 1971. The following events then occurred:

| | |
|---|---|
| October 19, 1971 | — Defendant sent copies of the book to reviewers; |
| November 15, 1971 | — Defendant released the book to the trade; |
| January 21, 1972 | — Defendant advertised the book in the *New York Times;* |
| February 1972 | — Defendant, because of lack of sales, substituted paper covers for hard covers on the 2500 copies; |
| August 1973 | — Defendant sold approximately 1857 hard cover copies at 40 cents per copy (the regular wholesale price had been $4.50) to a remainder outlet known as Marboro Books which marketed the book by mail order and through retail outlets. |

The defendant's distribution (sale and gift) of the book throughout the years was as follows:

| Calendar Year | Hard Cover | Paperback |
|---|---|---|
| 1971 | 4120 | —— |
| 1972 | 300 | 540 |
| 1973 | 1895 | 344 |
| 1974 (through June 30) | —— | 243 |

The complaint had been filed on May 31, 1974. Within one year prior to that date the defendant had distributed at least 1857 hard cover copies and a number of soft cover copies. At the time of trial the defendant had an inventory of 1373 paperback copies upon which it drew to meet requests for the book.

The trial court adopted the "single publication" rule, under which an edition of a book is treated as one publication so that a plaintiff may bring only one action for

the libel within one year from a particular date.[1] It found the publication date to be November 15, 1971, the date on which the book was released to the trade, and therefore struck the plaintiff's claim for damages despite the defendant's substantial sales within the one year before the complaint was filed. Two grounds were suggested by the trial court as justifying adoption of the single publication rule: (1) the legislative policy discovered in the relatively short (one year) period of limitations applicable to libels, *N. J. S. A.* 2A:14-3, and (2) the policy reflected by our rules permitting joinder of numerous causes of action against a defendant in one action. *R.* 4:27-1; 131 *N. J. Super.* at 387-388.

The trial court's reliance on the joinder rule is somewhat misplaced, for the single publication principle evolved from the equitable doctrine of preventing a multiplicity of actions. The single publication rule is based upon the short statute of limitations and the judicial policy disfavoring numerous actions between the same parties. These two concepts serve different functions. Each should be considered separately, though in operation one may act as a limit on the other. The failure to place each principle in its proper perspective has led to the misapplication of both. *See,* "The Single Publication Rule in Libel: A Fiction Misapplied," 62 *Harv. L. Rev.* 1041 (1949).

*N. J. S. A.* 2A:14-3 states that "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." "Publication" is a word of art and refers to the distribution of written material or the transmittal of the spoken word to a third person. There can be no doubt that when the Legislature enacted the libel statute of limitations in 1934,

---

[1]This rule was first applied to books in 1938 by the New York Court of Appeals in a 4-3 opinion, *Gregoire v. G. P. Putnam's Sons,* 298 *N. Y.* 119, 81 *N. E.* 2d 45, *reh. den.* 298 *N. Y.* 753, 83 *N. E.* 2d 152 (1948).

*L.* 1934, *c.* 98, p. 287, publication occurred when the libelous material was communicated to a third person. *Prosser, Law of Torts* (4th ed. 1971) at 766–768; *Gatley on Libel and Slander* (5th ed. 1960) at 81–82; *Townsend on Slander & Libel* (3d ed. 1877) at 144–146. Each repetition of the defamation was a publication in itself. *Restatement of Torts,* § 578 (1938). Each constituted a separate cause of action. *Odgers, Libel and Slander* 132 (6th ed. 1929); 1 *Harper and James, The Law of Torts,* § 5.15 (1956). So, although the period of limitations selected by the Legislature was relatively short, one year, still the wrongdoer was responsible for each libelous act though the damages were limited to those occurring within the applicable one year period. No sound reason has been advanced why the judiciary should now modify the Legislature's 1934 act.

It is, of course, true that under the common law rule the period for bringing suit may in practice extend far beyond a year, but only if and because the tortfeasor continues to circulate the actionable material. *See* dissenting opinion of Judge Desmond in *Gregoire v. G. P. Putnam's Sons,* 298 *N. Y.* 119 at 128–129, 81 *N. E.* 2d 45 at 50 (1948). The statute of limitations is intended to bar stale claims and not, through application of collateral legal fictions, to extinguish those that are viable.

The doctrine by which multiple actions might be avoided by one proceeding is equally unpersuasive as a basis for adoption of the single publication rule.

Prevention of a multiplicity of actions developed as an equitable device to ameliorate the common law requirement that a plaintiff had to institute numerous suits arising out of a continuing wrong, such as nuisance, waste or trespass. Equity provided a forum in which one action would encompass all such claims. 1 *Pomeroy's Equity Jurisprudence,* (5th ed. 1941) § 244 at 463, has described the equitable cause of action in the following manner:

The multiplicity of suits to be avoided, which are generally actions at law, shows that the legal remedies are inadequate, and cannot

meet the ends of justice, and therefore a court of equity interferes, and although the primary rights and interests of the parties are legal in their nature, it takes cognizance of them, and awards some specific equitable remedy, which gives, perhaps in one proceeding, more substantial relief than could be obtained in numerous actions at law. This is the true theory of the doctrine in its application to the two jurisdictions. [*Id.* at 463]

Vice Chancellor Pitney subscribed to this point of view in *Feigenspan v. Nizolek,* 71 *N. J. Eq.* 382, 400 (Ch. 1906). The doctrine was extended to enable one who was subject to several successive actions to institute one action in equity to resolve all the disputes, if the same legal questions and similar factual issues existed in all the controversies. 1 *Pomeroy's Equity Jurisprudence, supra,* § 254; *contra, City of Newark v. Chestnut Hill Land Co.,* 77 *N. J. Eq.* 23 (Ch. 1910).

The permissive joinder of claims permitted by our rules, *R.* 4:27–1, is consonant with this policy. The doctrine is also akin to the mandatory "single controversy" principle which this Court has adopted. *Falcone v. Middlesex County Med. Soc.,* 47 *N. J.* 92 (1966); *Ajamian v. Schlanger,* 14 *N. J.* 483, *cert.* den. 348 *U. S.* 835, 75 *S. Ct.* 58, 99 *L. Ed.* 659 (1954). In *Silverstein v. Abco Vending Service,* 37 *N. J. Super.* 439 (App. Div. 1955), the court remarked "that the courts of this state are determined to enforce the prime aim of the new practice for '. . . the just and expeditious determination *in a single action* of the ultimate merits of an entire controversy between litigants.'" *Id.* at 449 (quoting *Ajamian v. Schlanger, supra*).

The "single controversy" rule is designed to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness. These same reasons also support a rule requiring one action in controversies arising out of the sales of books containing identical libelous material. Accordingly, courts have permitted a party to maintain only one suit with respect

to completed distributions of a book. *Leonard v. Pope, 27 Mich.* 145, 150 (1873); *Galligan v. Sun Printing & Publishing Ass'n,* 25 *Misc.* 355, 54 *N. Y. S.* 471 (Sup. Ct. 1898). Although all existing causes of action must be joined in one suit, this is not to say, as the trial court has, that the plaintiff's failure to file an earlier complaint should bar the plaintiff from maintaining at least one action encompassing all viable claims.

Application of the equitable principle preventing multiplicity of actions would seemingly be subject to the charge which is leveled at the "single publication" rule of sanctioning the dissemination of libelous material *after* a judgment has been entered. *Cf.* dissenting opinion of Judge Desmond in *Gregoire v. G. P. Putnam's Sons,* 298 *N. Y.* 119 at 129, 81 *N. E.* 2d 45 at 51 (1948). But this situation can be averted by granting the plaintiff, in addition to damages, injunctive relief to prevent future distribution of the infected literature.

Although historically equity would interfere only to protect property rights, *Mayer v. The Journeymen Stonecutters' Ass'n,* 47 *N. J. Eq.* 519, 527 (Ch. 1890); *Gee v. Pritchard,* 2 *Swanst.* 402 (1818); Pound, "Equitable Relief Against Defamation and Injuries to Personality," 29 *Harv. L. Rev.* 640 (1916), personal rights, including one's reputation, are entitled to the guardianship of the law in a measure at least equal to that of property rights. That position was reflected in a New Jersey case decided at least 70 years ago, *Vanderbilt v. Mitchell,* 72 *N. J. Eq.* 910, 919 (E. & A. 1907), and it is appropriate that injunctive relief be available to safeguard such interests.

A more serious concern involves equity's refusal to enjoin publication of writings in advance because of infringement of freedom of the press. 4 *W. Blackstone, Commentaries* (4th Cooley ed. J. Andrews 1899) 152–153; *Brandreth v. Lance,* 8 *Paige* 24 (N. Y. Ch. 1839); see concurring opinion, Schreiber, J., in *State v. Allen,* 73 *N. J.* 132 (1977) at 169 and 171. But this fear of censorship does not exist when a

libel has been clearly established. Accordingly, the English courts have granted injunctions freely in that context. *Collard v. Marshall*, 1 *Ch.* 571, 1 *L. R.* 571 (1892); *Saxby v. Easterbrook and Hannaford*, 3 *L. R.* 339 (C. P. Div. 1878); *Halsey v. Brotherhood*, 15 *L. R.* 514 (C. D. 1880). In England the use of even an interlocutory injunction has been sanctioned where the libel is clear. *Gatley on Libel and Slander, supra,* at 683.[2] Nor does issuing an injunction to prevent the further dissemination of material already published and found to be defamatory run afoul of First Amendment prohibitions. *Retail Credit Company v. Russell*, 234 *Ga.* 765, 218 *S. E.* 2d 54 at 62–63 (1975); *O'Brien v. University Community Tenants Union, Inc.,* 42 *Ohio St.* 2d 242, 327 *N. E.* 2d 753 at 755 (1975); *cf. Pittsburgh Press Co. v. Pittsburgh Com'n on Human Relations,* 413 *U. S.* 376, 390, 93 *S. Ct.* 2553, 2561, 37 *L. Ed.* 2d 669, 679–80 (1973). There is no sound reason why a party should not be entitled to injunctive relief against the future distribution of a libel found to exist in a book.

The primary inequities and complexities of the single publication rule may be summarized as follows:

1. A plaintiff may be foreclosed from having his day in court even though the defendant has published the libel within one year.

2. A defendant may continue to publish libels with impunity after the statement has been adjudicated libelous.

3. Under the rule a new edition is considered a new publication and triggers the statute of limitations again. However, functionally there is no difference between sales of the same book which contains the identical libel whether

---

[2]The United States Supreme Court has repeatedly stated that freedom of the press does not prohibit punishment for libels. *Chaplinsky v. New Hampshire*, 315 *U. S.* 568, 62 *S. Ct.* 766, 86 *L. Ed.* 1031 (1941); *Beauharnais v. Illinois*, 343 *U. S.* 250, 72 *S. Ct.* 725, 96 *L. Ed.* 919, reh. den. 343 *U. S.* 988, 72 *S. Ct.* 1070, 96 *L. Ed.* 1375 (1951).

from one edition or another. For example, if the defendant initially printed 2500 copies of a book and two years later printed a new edition of an additional 2500 copies, two statutes of limitations would apply. Whereas if the entire 5000 copies were printed at the start, the suit would have to be brought within one year even though it was distributed over the same period of time.

4. The rule creates questions as to when publication occurs. For example, the trial court here rejected a reprinting as a new publication. But is there any difference between a reprinting and a new edition for publication purposes? See *Wheeler v. Dell Publishing Co.*, 300 *F*. 2d 372 (7th Cir. 1962), which answers this query in the negative.

5. In this case, application of the rule may lead to the anomalous result suggested by the trial court of denying the plaintiff monetary relief because the statute of limitations has run and yet granting injunctive relief beyond that period.

These inequities and problems inherent in the single publication rule may be avoided by applying established principles which recognize the existence of a cause of action for libel upon dissemination of defamatory material to a third person and permit a party to maintain only one action so as to avoid a multiplicity of suits. In applying these traditional doctrines to this case, I would hold that: (1) plaintiff's cause of action is not barred with respect to any sales made after May 31, 1973; (2) the plaintiff is entitled to maintain one suit for damages attributable to libels which have occurred within one year before the date suit was instituted; and (3) the plaintiff's remedy may include injunctive relief to prevent future dissemination of libelous material.

Accordingly, I would reverse.

Chief Justice HUGHES joins in this opinion.

*For affirmance*—Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER.—5.

*For reversal*—Chief Justice HUGHES and Justice SCHREIBER.—2.