*Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*

# United States Court of Appeals
## For the Second Circuit

August Term 2022

Submitted:   November 29, 2022
Decided:   January 2, 2024

No. 22-2061

---

JOSEPH KASIOTIS, individually and on behalf of all
other similarly situated New York consumers,

*Plaintiff-Appellee,*

*v.*

NEW YORK BLACK CAR OPERATORS' INJURY
COMPENSATION FUND, INC.,

*Defendant-Appellant.**

---

Appeal from the United States District Court
for the Southern District of New York
No. 18-cv-8057, Philip M. Halpern, *Judge.*

---

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Before: CARNEY, SULLIVAN, and MENASHI, *Circuit Judges*.

This appeal involves a class action lawsuit filed by Plaintiff Joseph Kasiotis ("Kasiotis") on behalf of himself and all similarly situated New York consumers, alleging that Defendant New York Black Car Operators' Injury Compensation Fund, Inc. (the "Fund") unjustly enriched itself by improperly collecting a surcharge on noncash tips paid by passengers to drivers who provided livery car – or "black car" – services from January 2000 until February 1, 2021, when the Fund eliminated the imposition of a surcharge on noncash tips. After the district court (Halpern, *J.*) certified the class, the parties filed cross-motions for summary judgment as to the Fund's liability on the unjust enrichment claim, which the district court resolved in favor of Kasiotis and the class.

On appeal, certified to us by the district court under 28 U.S.C. § 1292(b), the Fund argues that the district court erred in granting summary judgment because (1) the statute establishing the Fund – Article 6-F of the New York Executive Law ("Article 6-F") – authorizes the imposition of a surcharge on noncash tips, (2) the Fund's interpretation of Article 6-F is entitled to deference, (3) the Fund was not unjustly enriched, and (4) the voluntary payment doctrine bars Kasiotis's claims. We agree with the Fund that Article 6-F unambiguously authorizes it to impose a surcharge on noncash tips paid in connection with covered black car services. Accordingly, we **REVERSE** the order of the district court granting summary judgment in favor of Kasiotis and the class and **REMAND** the case with instructions to dismiss the unjust enrichment claim.

REVERSED AND REMANDED.

Richard H. Dolan, Bradley J. Nash, Seth D. Allen, Schlam Stone & Dolan LLP, New York, NY, *for Defendant-Appellant.*

Jeffrey I. Carton, Steven R. Schoenfeld, Amber T. Wallace, Denlea & Carton LLP, White Plains, NY, *for Plaintiff-Appellee.*

RICHARD J. SULLIVAN, *Circuit Judge*:

This appeal involves a class action lawsuit filed by Plaintiff Joseph Kasiotis ("Kasiotis") on behalf of himself and all similarly situated New York consumers, alleging that Defendant New York Black Car Operators' Injury Compensation Fund, Inc. (the "Fund") unjustly enriched itself by improperly collecting a surcharge on noncash tips paid by passengers to drivers who provided livery car – or "black car" – services from January 2000 until February 1, 2021, when the Fund eliminated the imposition of a surcharge on noncash tips. After the United States District Court for the Southern District of New York (Halpern, *J.*) certified the class, the parties filed cross-motions for summary judgment as to the Fund's liability on the unjust enrichment claim, which the district court resolved in favor of Kasiotis and the class.

On appeal, certified to us by the district court under 28 U.S.C. § 1292(b), the Fund argues that the district court erred in granting summary judgment because (1) the statute establishing the Fund – Article 6-F of the New York Executive Law ("Article 6-F") – authorizes the imposition of a surcharge on noncash tips, (2) the Fund's interpretation of Article 6-F is entitled to deference, (3) the Fund was not unjustly enriched, and (4) the voluntary payment doctrine bars Kasiotis's claims.

3

We agree with the Fund that Article 6-F unambiguously authorizes it to impose a surcharge on noncash tips paid in connection with covered black car services. Accordingly, we **REVERSE** the order of the district court granting summary judgment in favor of Kasiotis and the class and **REMAND** the case with instructions to dismiss the unjust enrichment claim.

## I. BACKGROUND

In 1999, with the passage of Article 6-F, the New York legislature established the Fund as a not-for-profit corporation to provide workers' compensation benefits to black car drivers in New York. All central dispatch facilities – *e.g.*, qualifying livery and black car operators that dispatch for-hire vehicles, *see* N.Y. Exec. Law § 160-cc(3) – must become members of the Fund as a condition of conducting business in the state. *See id.* § 160-hh(1); *see also* App'x at 18.

Article 6-F enables the Fund to establish and collect a "uniform percentage surcharge" on black car services in order to cover its estimated operating costs, which include the costs of insurance, benefits payments, expenses, and liabilities. N.Y. Exec. Law § 160-jj(1)–(2). The statute provides that this surcharge may "be added to (a) the invoices or billings for covered services sent to the customers of the [F]und's members by a member or its agent and (b) the credit payments for

4

covered services received by a member or its agent." *Id.* § 160-jj(2). The term "[c]overed services" is defined to include "all dispatches" from central dispatch facilities located within the state and "all dispatches involving a pick-up in the state" when the central dispatch facility is located outside of the state. *Id.* § 160-cc(4).

The Fund's plan of operation provides that "[t]he surcharge amount shall be calculated on gross invoices, billings[,] and credit for covered services," including "fares charged, tolls, parking, waiting time, tips, telephone use, service charges[,] and all other miscellaneous charges." App'x at 358; *see also* N.Y. Exec. Law § 160-dd (providing that the Fund "shall perform its functions in accordance with its plan of operation"). In practice, the Fund does not typically apply the surcharge to the entire invoice, bill, or credit payment from a ride, excepting certain line items such as sales taxes, congestion charges, and cancellation fees from the surcharge. The Fund has, however, consistently imposed a surcharge on noncash tips for the approximately twenty-year period from its creation until February 2021.

The Fund's initial members were generally black car companies, such as limousine services and companies geared toward corporate clients.

5

Traditionally, a rider who requested a black car service would receive a paper voucher with details about the trip, which the rider would return to the driver at the end of the ride with a note as to whether the rider wished to leave a tip. The driver would then provide these vouchers to the black car company, which would aggregate the payments and charge customers for their black car usage on a monthly basis.

In recent years, the Fund's membership has expanded to also include app-based transportation companies like Uber, Lyft, and Via, which allow users to request and pay for black car rides from their phones. At the end of the ride, the app gives the rider the opportunity to add a tip for the driver to the overall credit-card payment for the trip. While Lyft and Via generally opted to pay the surcharge amount on these noncash tips themselves, Uber collected this surcharge from customers after informing them that such a surcharge may be added to their tip.[1]

Kasiotis – an allegedly "frequent user of black car operators' services, including Uber," App'x at 17 – commenced this action in New York state court on

---

[1] In their briefs on appeal, both parties represent that the Fund amended its plan of operation to eliminate the imposition of a surcharge on noncash tips, as of February 1, 2021. *See* Fund Br. at 9 n.4; Kasiotis Br. at 10. Our descriptions of how the surcharge was imposed pertain to the practices in place at the time the complaint and summary judgment motions were filed.

behalf of himself and other similarly situated black car passengers, seeking restitution of the surcharge collected by the Fund in connection with riders' noncash tips. The Fund removed the case to the United States District Court for the Southern District of New York, where a plaintiffs' class was certified. The parties subsequently filed cross-motions for summary judgment as to the Fund's liability on the unjust enrichment claim, which the district court resolved in favor of Kasiotis and the class. An appeal followed, which we dismissed for lack of appellate jurisdiction. *See Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*, No. 20-3955, 2022 WL 258570 (2d Cir. Jan. 28, 2022). The parties then filed a joint motion for a certificate of appealability pursuant to 28 U.S.C. § 1292(b), which the district court granted.[2]

## II. DISCUSSION

We have jurisdiction to review the district court's interlocutory order pursuant to 28 U.S.C. § 1292(b). On August 5, 2022, the district court amended

---

[2] On August 12, 2022, the Fund filed a motion pursuant to Federal Rule of Appellate Procedure 5(a) for leave to appeal from the district court's order, which was granted. *See* Case No. 22-1759, Doc. Nos. 1, 19. The appeal was then referred to the same panel that dismissed the prior appeal for lack of appellate jurisdiction, in accordance with that order of dismissal. *See Kasiotis*, 2022 WL 258570, at *3. Our decision today therefore relies not only on the parties' submissions in connection with the instant appeal, but also on the briefs filed in the prior appeal, as well as the points raised at the December 8, 2021 oral argument held in that case. *See* Case No. 20-3955.

its order granting Kasiotis's motion for summary judgment to allow for interlocutory appeal, ruling that the order involves a controlling question of law as to which there is substantial ground for difference of opinion. We granted leave to appeal on October 6, 2022.

We review a district court's grant of summary judgment *de novo*, *see Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 208 (2d Cir. 2021), and will affirm when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "The interpretation of a statute is a question of law, which we review *de novo*." *United States v. Bedi*, 15 F.4th 222, 225–26 (2d Cir. 2021); *see also KLC, Inc. v. Trayner*, 426 F.3d 172, 174 (2d Cir. 2005).

On appeal, the Fund argues that the district court erred by holding that (1) Article 6-F does not authorize the Fund to collect a surcharge on noncash tips paid by black car passengers, (2) the Fund's interpretation of Article 6-F was not entitled to deference, (3) the Fund was unjustly enriched from the collection of the surcharge on noncash tips, and (4) the voluntary payment doctrine did not bar Kasiotis's claim. We agree that the Fund was statutorily permitted to collect a surcharge on noncash tips, and therefore the district court's grant of summary judgment to Kasiotis and the class was erroneous. Accordingly, we reverse the

8

district court's order on that basis and decline to reach the Fund's other claims of error.

Because diversity is the basis for federal subject-matter jurisdiction in this action and we are deciding matters of state law, we must "predict how [New York's] highest court would resolve" the issue identified. *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (internal quotation marks omitted); *see also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 120 (2d Cir. 2021). When considering questions of statutory interpretation, the New York Court of Appeals has cautioned that the "primary consideration is to ascertain and give effect to the intention of the legislature." *Kuzmich v. 50 Murray St. Acquisition LLC*, 34 N.Y.3d 84, 91 (2019) (internal quotation marks and alterations omitted). The New York Court of Appeals has further advised that "[t]he text of a statute is the clearest indicator of . . . legislative intent" and therefore "courts should construe unambiguous language to give effect to its plain meaning." *Avella v. City of New York*, 29 N.Y.3d 425, 434 (2017) (internal quotation marks omitted). "Absent ambiguity," New York courts may not "resort to rules of construction to alter the scope and application of a statute." *Kuzmich*, 34 N.Y.3d at 91 (internal quotation marks and alterations omitted).

We accordingly begin with the statutory text. Article 6-F authorizes the Fund to impose a "uniform percentage surcharge" on "invoices," "billings," and "credit payments for covered services." N.Y. Exec. Law § 160-jj(2). The key question is therefore whether a noncash tip is a component of an "invoice[] or billing[] for covered services" or is otherwise considered a "payment[] for covered services" within the meaning of Article 6-F. We conclude that it plainly is. And, because the statute is unambiguous on this point, we need not reach the Fund's claim that the district court's failure to defer to its interpretation of the statute was erroneous. *See Belmonte v. Snashall*, 2 N.Y.3d 560, 566 (2004) (explaining that "the judiciary need not accord any deference" to an agency's interpretation where the "question is one of pure statutory reading and analysis" (internal quotation marks omitted)).

As noted previously, Article 6-F defines "[c]overed services" as "*all* dispatches" that originate from a New York dispatch facility or involve a pick-up in New York. N.Y. Exec. Law § 160-cc(4) (emphasis added). By its clear terms, this definition limits the application of the surcharge to rides with certain specified connections to the state. Critically, however, the definition of "[c]overed services" in no way limits the specific types of charges or line items that are

10

considered "[c]overed" under the statute. Indeed, the unambiguous language of the statute makes clear that the term "[c]overed services" imposes only a "geographic limitation" on trips to which the surcharge can be applied. *See* Sp. App'x at 8.

Having pinned down the meaning of "[c]overed services," we must next determine whether the statute authorizes the imposition of a surcharge on a noncash tip paid in connection with a covered service. Article 6-F provides that, if a trip falls within the definition of a covered service, the surcharge may be applied to the "invoice[]," "billing[]," or "credit payment[]" for the trip. N.Y. Exec. Law § 160-jj(2). Importantly, the statute contains no language limiting the application of the surcharge to specific line items or components of an invoice, bill, or credit payment, such as a noncash tip. We therefore agree with the Fund that the plain language of Article 6-F authorizes it to "apply the surcharge to the entire invoice, billing[,] or credit payment for [a] trip." Fund Br. at 27.

Kasiotis contends that, although a tip may ultimately be reflected on a rider's "receipt" or "statement of account," such "receipt[s]" or "statement[s] of account" do not constitute invoices, bills, or credit payments within the meaning of Article 6-F. Kasiotis Br. at 18–19. We disagree. Contrary to Kasiotis's

11

contention, the monthly statements provided to customers of traditional black car companies are plainly "invoices" or "billings" for previously incurred charges – which include any noncash tips that individual riders may have designated for specific drivers that now must be paid in the aggregate by the black car company's customer (which may be a corporation, rather than the individual riders themselves).    And even if we were to accept Kasiotis's contention that the receipts riders receive at the end of an Uber ride are not invoices or bills for the purposes of Article 6-F, there can be no question that the rider's ultimate credit-card payment, including any noncash tip, constitutes a credit payment within the meaning of the statute.    By providing that the surcharge may be added to "credit payments," in addition to "invoices [and] billings," N.Y. Exec. Law § 160-jj(2), Article 6-F makes unmistakably clear that the surcharge may be applied to noncash tips regardless of the specific documentation provided to the customer.

Moreover, we are unpersuaded by Kasiotis's argument that a tip is akin to a gift, and therefore does not constitute a payment for a service.    To the contrary, the plain meaning of the word "tip" confirms that it is a payment for services performed or rendered in connection with a trip – regardless of whether it is characterized as a "gift" or "present."    *See Tip*, *Oxford English Dictionary* (2d ed.

1991) ("A small present of money given . . . *for a service rendered* or expected." (emphasis added)); *Tip, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ("[A] gift or a sum of money *tendered for a service performed* or anticipated." (emphasis added)); *Tip, New Oxford American Dictionary* (3d ed. 2010) ("[A] sum of money given to someone as a *reward for their services*." (emphasis added)).

Accordingly, we conclude that the plain language of Article 6-F authorizes the Fund to impose a surcharge on noncash tips and that the district court erred in holding that the Fund was unjustly enriched by this practice.

### III. CONCLUSION

For these reasons, we **REVERSE** the order of the district court granting Kasiotis's motion for summary judgment and **REMAND** the case with instructions to dismiss the unjust enrichment claim.