*Clarke v. GEICO*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of January, two thousand and twenty-six.

PRESENT:    Steven J. Menashi,
            Beth Robinson,
            Myrna Pérez,
                    *Circuit Judges.*

_____

COLIN CLARKE and COLIN CLARKE, M.D., P.C.,

     *Plaintiffs-Appellants,*

   v.                                                      No. 24-3181

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY,

     *Defendants-Appellees.*[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiffs-Appellants*: WESLEY R. MEAD, Mead Law Firm, P.C., Milford, CT (John G. Balestriere, Balestriere, New York, NY, *on the brief*).

*For Defendants-Appellees*: EVAN H. KRINICK (Barry I. Levy, Cheryl F. Korman, Steven T. Henesy, Merril S. Biscone, *on the brief*), Rivkin Radler LLP, Uniondale, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Block, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

After GEICO brought two civil RICO actions against Colin Clarke and his medical practice, Clarke sued GEICO for "unlawful interference with protected rights" under New York law. N.Y. Civ. Rights Law § 70-b(1). A claim for unlawful interference arises when "any person or entity commences an action in any court" in which the allegations "involve," inter alia, access to or provision or facilitation of "lawfully provided medical care including but not limited to reproductive and/or endocrine health care." *Id.* § 70-b(2), (6). The district court dismissed Clarke's complaint on the ground that the "medical care" covered by the statute must be related to "reproductive or gender-affirming medical care." *Clarke v. GEICO*, No. 24-CV-493, 2024 WL 4680490, at *3 (E.D.N.Y. Nov. 5, 2024). We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

## I

Following the leak of the opinion of the Supreme Court in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), "pro-access states have contemplated or adopted policies explicitly aimed at protecting abortion providers from suits brought under the anti-abortion laws of other states." Paul

Schiff Berman et al., *Conflicts of Law and the Abortion War Between the States*, 172 U. Pa. L. Rev. 399, 492 (2024). New York adopted "the 'freedom from interference with reproductive and endocrine health advocacy and travel exercise act,' or the 'FIRE HATE act.'" 2022 Sess. Law News of N.Y. Ch. 218, § 1 (S. 9039-A) [hereinafter FIRE HATE Act].[1] The FIRE HATE Act authorized a cause of action to counteract "actions which would" burden "the exercise of rights protected by the New York state constitution and the laws of the state of New York." FIRE HATE Act § 2. The Act amended the New York Civil Rights Law to include the following description of the cause of action:

> 1. A claim of unlawful interference with protected rights is established under this section. Such claim shall arise when a person demonstrates that they exercised or attempted to exercise, or facilitated or attempted to facilitate the exercise of a right protected under the constitution of the state of New York and/or protected or permitted by the laws of the state of New York, to obtain or provide the medical care described in subdivision six of this section, and such exercise, provision, facilitation, or attempt thereof results in litigation or criminal charges brought against that person in any court in the United States or its territories.
>
> 2. Such claim shall arise when any person or entity commences an action in any court, in the United States or any of its territories, in which the allegations against the person, whether civil or criminal, involve accessing, providing, facilitating, or attempting to access, provide, or facilitate the medical care described in subdivision six of this section.
>
> 3. In a claim for unlawful interference with protected rights under this section:

---

[1] The FIRE HATE Act was amended in 2025, *see* 2025 Sess. Law News of N.Y. Ch. 694 (S. 4914-B), but in this appeal we apply the statute that was operative at the relevant time.

(a) compensatory damages, as well as costs and attorneys' fees, including expert witness fees, shall be recoverable upon a demonstration of unlawful interference; and

(b) additional damages of up to three times the amount of compensatory damages shall be recoverable upon an additional demonstration that the action against the plaintiff was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the exercise of rights protected in New York, including but not limited to the rights in subdivision six of this section.

4. Any action or proceeding brought pursuant to this section shall be commenced no later than six years after the date on which the violation of this section is committed.

5. Nothing in this section shall affect or preclude the right of any party to any recovery otherwise authorized by common law, or by statute, law or rule.

6. Rights specifically protected under this section shall include lawfully provided medical care including but not limited to reproductive and/or endocrine health care, and all medical, surgical, counseling or referral services relating to the human reproductive system, including but not limited to services relating to pregnancy, contraception, or the termination of a pregnancy.

7. An action under this section shall be brought in the Supreme Court of the state of New York.

N.Y. Civ. Rights Law § 70-b. The legislation was directed at the "risk of civil actions and criminal actions brought in courts *outside the state of New York* seeking to punish or impose civil liability on individuals for traveling to New York." FIRE HATE Act § 2 (emphasis added).

But this case does not involve those circumstances. Clarke sued GEICO for unlawful interference with protected rights after GEICO brought two civil RICO actions against him in the Eastern District of New York. *See* J. App'x 17 (¶ 13). In

4

the first case, GEICO alleged that Clarke worked with a medical equipment company to fraudulently bill for unnecessary medical equipment in no-fault insurance claims. *See* Complaint, *GEICO v. Exon Med. Equip., Inc.*, No. 20-CV-2457 (E.D.N.Y. June 3, 2020), ECF No. 1. Clarke and GEICO stipulated to the dismissal of those claims with prejudice. *See* Stipulation of Dismissal, *GEICO v. Exon Med. Equip., Inc.*, No. 20-CV-2457 (E.D.N.Y. Apr. 12, 2021), ECF No. 42. In the second case, GEICO alleged that Clarke fraudulently billed for unnecessary examinations and other healthcare services in no-fault insurance claims. *See* Complaint, *GEICO v. Clarke*, No. 23-CV-4605 (E.D.N.Y. June 21, 2023), ECF No. 1. That case has proceeded to discovery.

Clarke filed his suit against GEICO in the Bronx County Supreme Court alleging that GEICO violated § 70-b because its civil RICO lawsuits "were commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the exercise of rights protected in New York, including but not limited to the rights in New York Civil Rights Law Section 70-b(6), which includes the right to lawfully provide medical care." J. App'x 33-34 (¶ 53). According to Clarke, GEICO's conduct—its aggressive use of lawsuits, examinations under oath, complaints to the Office of Professional Medical Conduct, and data collection about his offices and patients—indicated that it was intent on inhibiting his treatment of minority patients in the Bronx and avoiding the restrictions of New York's no-fault insurance laws. *See id.* at 15-34 (¶¶ 10-53).

GEICO removed the suit to federal court on the basis of the diversity of the parties. The district court dismissed Clarke's complaint on the ground that the "medical care" identified in § 70-b(6) must be related to "reproductive or gender-affirming medical care." *Clarke*, 2024 WL 4680490, at *3. The district court explained that this interpretation followed from an application of the *ejusdem generis* canon, was consistent with the legislative history of the FIRE HATE Act, and avoided the "unreasonable and absurd" results that a more expansive interpretation would yield. *Id.* Clarke timely appealed.

## II

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)).

When a federal court is sitting in diversity, "'the highest court of a state has the final word on the meaning of state law,' and thus 'we are bound to apply New York law as determined by the New York Court of Appeals.'" *Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) (quoting *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)). When the New York Court of Appeals has not determined a particular issue, "it is 'our job to predict how the forum state's highest court would decide the issues before us,' at least when 'sufficient precedents exist for us to make this determination.'" *E. Fork Funding LLC v. U.S. Bank, N.A.*, 118 F.4th 488, 496 (2d Cir. 2024) (quoting *Khan v. Yale Univ.*, 27 F.4th 805, 831 (2d Cir. 2022)). In doing so, "we are bound to interpret [New York] law according to [New York's] own interpretive rules." *Morenz v. Wilson-Coker*, 415 F.3d 230, 236-37 (2d Cir. 2005).

## A

"The New York Court of Appeals holds that the 'primary consideration' in statutory interpretation is 'to ascertain and give effect to' the legislature's intent." *Windward Bora LLC v. Sotomayor*, 113 F.4th 236, 241 (2d Cir. 2024) (quoting *Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*, 90 F.4th 95, 99 (2d Cir. 2024)). "Because a statute's text is the 'clearest indicator' of legislative intent, 'courts should construe unambiguous language to give effect to its plain meaning.'" *Id.* (quoting *Kasiotis*, 90 F.4th at 99).

Although the district court and the parties have focused on the scope of the term "medical care" in § 70-b(6), we need not resolve that issue. Regardless of the scope of that term, Clarke fails to state a claim under § 70-b because the GEICO lawsuits did not seek to impose liability on Clarke for the provision of medical

6

care—of any kind—and therefore the lawsuits did not "result" from the provision of medical care.[2] The statute provides that a "claim of unlawful interference with protected rights … shall arise when a person demonstrates that they exercised … a right … to obtain or provide the medical care described in subsection six … and such exercise … results in litigation." N.Y. Civ. Rights Law § 70-b(1). To state a claim, therefore, a plaintiff must plausibly allege that he (1) exercised a right to "lawfully provided medical care," and (2) the exercise of that right "results" in litigation.

"A thing 'results' when it 'arises as an effect, issue, or outcome *from* some action, process or design.'" *Burrage v. United States*, 571 U.S. 204, 210 (2014) (alterations omitted) (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)). The "results" language "imposes, in other words, a requirement of actual causality." *Id.* at 211. But GEICO sued Clarke in response to his alleged schemes to submit false bills for payment rather than his provision of medical care. The provision of medical care was not even a but-for cause of the litigation: Clarke could have submitted false bills *before* he provided the related medical care—and he could have submitted false bills without providing any medical care at all. The actual cause of the litigation was his purported false billing practices rather than his provision of medical care.

At oral argument, Clarke suggested that he could state a claim under § 70-b based on allegations that even though GEICO's lawsuit took issue only with purported false billing, its true motive in bringing the lawsuit was to prevent him from treating patients so that GEICO would not need to pay reimbursements.[3] We are not persuaded.

---

[2] *See* Memorandum in Support of Motion to Dismiss at 10-11, 15-17, *Clarke v. GEICO*, No. 24-CV-493 (E.D.N.Y. Apr. 22, 2024), ECF No. 30-1.

[3] *See* Oral Argument Audio Recoding at 9:52-10:02, 11:28-12:15, 12:32-12:50.

First, the statutory claim arises from the allegations of the challenged action rather than the intentions or objectives of the party that brought the action. *See* N.Y. Civ. Rights Law § 70-b(2) ("Such claim shall arise when any person … commences an action … in which *the allegations against the person* … involve accessing, [or] providing … the medical care described in subdivision six.") (emphasis added). That focus reflects the expressed purpose of the legislature to mitigate the "risk of civil actions and criminal actions … seeking to punish or impose civil liability on individuals for traveling to New York to exercise individual and human rights protected within the state of New York" and its express finding that "*imposing such liability* creates distinct harm within the state of New York." FIRE HATE Act § 2 (emphasis added).

Second—even assuming that a claim could be stated under § 70-b based on plausible allegations that a sham lawsuit was brought with the actual purpose of inhibiting the provision of medical care—Clarke has not plausibly alleged that the lawsuits here amounted to such a sham. Clarke alleged that GEICO required an excessive number of examinations under oath and sought an excessive number of records. *See* J. App'x 19-21, 25-27, 29 (¶¶ 18, 20-22, 32, 34, 36, 42). He argues that these aggressive litigation tactics raise a reasonable inference that GEICO does not want simply to prevail in the litigation but to penalize Clarke for treating patients. But the factual allegations that underly this contention—GEICO taking examinations under oath and gathering evidence—are at least as consistent with the pursuit of bona fide litigation over billing fraud as with an intentional targeting of Clarke's medical practice. "[W]here the well-pleaded facts do not permit the court to infer more than *the mere possibility of misconduct*, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (emphasis added) (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). At the pleading stage, the plaintiff must provide "allegations plausibly suggesting (not merely consistent with)" unlawful conduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Otherwise, the complaint "stops short

of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and alteration omitted). Clarke failed to cross that line here.

Clarke identifies a recent decision of the New York Court of Appeals answering the certified question of whether an insurance company may "deny a healthcare provider's no-fault benefits claim because the provider allegedly committed professional misconduct by paying for patient referrals." *GEICO v. Mayzenberg*, No. 83, 2025 WL 3259882, at *1 (N.Y. Nov. 24, 2025); *see also GEICO v. Mayzenberg*, 121 F.4th 404, 422 (2d Cir. 2024) (certifying the question). Clarke argues that GEICO's refusal to pay the no-fault claims was wrongful according to *Mayzenberg*, so GEICO's lawsuits against Clarke—based in part on allegations similar to *Mayzenberg*—must also be a wrongful interference with Clarke's medical practice.[4] But the recent legal uncertainty as to whether an insurance company could deny no-fault payments in somewhat similar circumstances supports rather than undermines the inference that GEICO is making credible legal claims. *See Mayzenberg*, 121 F.4th at 415-20. To arrive at the plausible inference that GEICO has brought its lawsuits against Clarke not because it believes its claims are valid but because it wants to penalize Clarke for providing medical care, "some further factual enhancement" would be needed. *Twombly*, 550 U.S. at 557.

**B**

Clarke argues that the district court abused its discretion by denying his request to amend his pleadings. Clarke made the request to the district court with a single sentence: "Clarke Plaintiffs[] respectfully request leave to replead in the event the Court grants GEICO's motion."[5]  Clarke did not identify any fact that he would include in an amended complaint, nor does he identify such a fact in this appeal.

---

[4] *See* Oral Argument Audio Recording at 10:33-11:12.

[5] Memorandum in Opposition to Motion to Dismiss at 31, *Clarke v. GEICO*, No. 24-CV-493 (E.D.N.Y. May 27, 2024), ECF No. 30-2.

We have explained that the district court has "acted within its discretion in denying the request for leave to amend" when the plaintiff "conclusorily requested leave to amend in two sentences … without specifying what additional factual allegations it would include if leave were granted, or how an amended complaint would cure the deficiencies … in its original complaint." *WC Cap. Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 334 (2d Cir. 2013). We discern no abuse of discretion by the district court that warrants a remand in this case.

*            *            *

We have considered Clarke's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10